**UNITED STATES of America, Plaintiff,**

v.

**Michael DERCACZ, a/k/a Michael Derkacz, Defendant.**

**No. 80 CV 1854.**

United States District Court,
E. D. New York.

Feb. 2, 1982.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y. by Allan A. Ryan, Jr., Director, Neal M. Sher, Deputy Director, Rodney G. Smith, Clarice R. Feldman, and Janet K. DeCosta, Trial Attys., Criminal Division, U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Schiano & Wallenstein by Stanley H. Wallenstein, and Michael Piznak, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

The Government brings this action pursuant to section 340(a) of the Immigration and Nationality Act of 1952 (INA), 8 U.S.C. § 1451(a), to revoke the United States citizenship of defendant Michael Dercacz, to set aside the November 11, 1954 district court order admitting defendant to citizenship, and to cancel the certificate of naturalization, No. 7381357, issued pursuant to that order. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1345, and 8 U.S.C. §§ 1421(a) and 1451(a).

The basis of the complaint is that defendant served as a member of the Ukrainian police force during World War II, that the Ukrainian police assisted the Germans in persecuting civilians in Nazi-occupied Ukraine territory, and that defendant concealed his Ukrainian police service both when he applied for immigration to the United States and when he applied for naturalization. Contending that defendant procured his citizenship illegally or by material misrepresentation, and that no genuine material fact issues exist, the Government seeks summary judgment under Rule 56, F.R.Civ.P.[1]

The significant facts adduced from extensive pretrial depositions and interrogatories and from United States immigration records follow. Defendant, who presently resides within the jurisdiction of this Court, was born in Zheldec, Ukraine, U.S.S.R., on February 22, 1909. In 1941, subsequent to Nazi German occupation of the Ukraine, defendant—then about 32 years old—voluntarily joined a Ukrainian police force in the town of Novy Yarychev, located in the region of L'vov within the Galicia district of the Ukraine. He was issued a uniform and a rifle and served as a salaried full-time policeman until July 1944.

In 1942, some 2,000 Jews of Novy Yarychev and other Jews from surrounding villages were forcibly concentrated in a ghetto near the town marketplace. The Jews were required to wear identifying armbands, were restricted in movement, trade, food and water, and some were used as forced laborers. In January 1943, the Jews were rounded up and killed by German forces.

After the war, on April 27, 1949, in order to enter the United States, defendant filed and signed a visa application in Germany, claiming eligibility under the Displaced Persons Act of 1948 (DPA), ch. 647, 62 Stat. 1009–14 (1948). On the visa application, defendant's occupation was listed as "dairy farmer." On May 26, 1954, approximately five years after he entered the country, defendant submitted a preliminary application to the Immigration and Naturalization Service for naturalization. In his application, defendant responded negatively to the question whether he had ever committed a crime of moral turpitude. On September 22, 1954, defendant submitted a petition for

**1.** Although the Supreme Court has imposed on the Government a stricter burden of proof in denaturalization proceedings, see, *e.g., Federenko v. United States*, 449 U.S. 490, 101 S.Ct. 737, 747, 66 L.Ed.2d 686 (1981), summary judgment procedure remains applicable in such actions. See 6 Moore's Federal Practice ¶ 56.-17[76] at 56–1133 (2d ed. 1980).

naturalization, swearing to the truth of statements made in the preliminary application. Finally, on November 11, 1954, defendant's petition for naturalization was granted.

The pivotal statutory provision is INA § 340(a), which requires revocation of citizenship that was "illegally procured or . . . procured by concealment of a material fact or by willful misrepresentation . . . ." 8 U.S.C. § 1451(a). The Government's case turns on the two independent prongs of INA § 340(a): illegal procurement and fraudulent procurement. Affirmative resolution of either is sufficient to revoke defendant's citizenship. For the reasons which follow, the Court finds that both prongs have been satisfied, and that no genuine triable issue exists which requires further development of the record.

Under the first prong of INA § 340(a), the Government argues that defendant was ineligible for the visa he obtained as a displaced person under the DPA; consequently, he would not have been lawfully admitted into this country, and his subsequent citizenship would therefore have been illegally procured. The question, then, is whether defendant legitimately entered the United States under the DPA.

The definitional section of the DPA, section 2, incorporated the definition of "refugees or displaced persons" contained in the International Refugee Organization (IRO) Constitution. See § 2, 62 Stat. 1009; 62 Stat. 3037–55 (1946). The IRO Constitution excluded from eligibility any person who "assisted the enemy in persecuting civil populations." Annex I, Part II, 62 Stat. 3051–52. Therefore, individuals who so assisted the enemy would be ineligible for admission into the United States:

> "The Act's definition of 'displaced persons' eligible for immigration to this country specifically excluded individuals who had 'assisted the enemy in persecuting civil[ians]' or had 'voluntarily assisted the enemy forces . . . in their operations . . . .'" *Federenko v. United States*, 449 U.S. 490, 101 S.Ct. 737, 741, 66 L.Ed.2d 686 (1981) (footnotes omitted).

Defendant admits that upon his own initiative he served as a uniformed, armed member of the Ukrainian police in Novy Yarychev during the time of the virtual incarceration and subsequent extermination of the 2,000 Jews. Dercacz Dep. at 80–84. Hence, the question becomes whether such service constituted assistance to the Nazis in persecuting the Novy Yarychev Jews. More specifically, the question for the purposes of the instant motion is whether defendant has "set forth specific facts" raising "a genuine issue for trial" as to whether his service constituted such assistance. Rule 56, F.R.Civ.P.

Defendant's sole opposition to summary judgment on this issue is found in his opposing affidavit:

> "We [the Ukrainian police] never had jurisdiction and neither I or [sic] my fellow Ukrainian police members had any contact or anything to do with the Jewish Ghetto or persons generally in the Novy Yarichiw Police District." Defendant's Opp.Aff. ¶ 8.

Yet this conclusory statement clearly fails to meet the obligation imposed by Rule 56. The cases uniformly hold that the opposing party must supply "supporting arguments or facts," *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978), and "concrete particulars," *Dressler v. MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964), in order to present a genuine issue for trial. Defendant's unsupported denial makes the instant claim particularly appropriate for disposition without trial.

> "Summary judgment, we have often remarked, is a valuable tool for piercing conclusory allegations and disposing of unsupportable claims prior to trial." *Applegate v. Top Associates, Inc.*, 425 F.2d 92, 96 (2d Cir. 1970).

Nevertheless, the Court is aware of the preciousness of the right to citizenship and the severe consequences of its loss. See *Federenko, supra*, 101 S.Ct. at 747. In fact the Supreme Court has required that revocation of citizenship must be based on "clear, unequivocal, and convincing" evidence; "it cannot be done upon a bare

preponderance of evidence which leaves the issue in doubt." *Maxwell Land-Grant Case*, 121 U.S. 325, 381, 7 S.Ct. 1015, 1028, 30 L.Ed. 949 (1887), *quoted in Federenko, supra* 101 S.Ct. at 747. In this light, defendant's mere failure to present factual support for his naked denial may be insufficient grounds for granting the Government's motion. Yet there is more. Defendant's own deposition testimony clearly and unequivocally controverts his present position.

Defendant testified that one of his duties on the Ukrainian police force was to bring Jews not wearing the identifying armband to the police station and to report to the commandant and the Gestapo. Dercacz Dep. at 98. He further testified that his duty was to report civilians known to have sold food to the the ghettoized Jews. *Id.* at 100. This testimony leaves no doubt that defendant, by virtue of his admitted duties, assisted the Nazis in persecuting civilian Jews. However, the question remains whether defendant's subsequent affidavit raises triable issues.

■ In summary judgment proceedings, where an affidavit conflicts with former testimonial evidence, the question is whether the affidavit raises *genuine* issues of fact. *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). Triable issues of fact cannot be created merely by sworn statements, conflicting with previous testimony, submitted for the purpose of opposing summary judgment.

"If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.*

Here the Court is convinced that defendant's affidavit fails to raise a genuine triable issue. Rather, it raises "sham issues which should not subject the [Government] to the burden of a trial." *Radobenko v.*

*Automated Equipment Corp.*, 520 F.2d 540, 544 (9th Cir. 1975). Defendant failed to submit any supporting facts which suggest that the former testimony should be discredited; therefore, the Court credits defendant's prior unambiguous admissions. These admissions provide clear and convincing evidence of defendant's invidious duties as a member of the Ukrainian police in Novy Yarychev and leave no doubt that defendant's service in such police force assisted the Nazis in persecuting civilian Jews.

■ With the foregoing in mind, the Court is of opinion that no genuine triable issue exists with respect to defendant's ineligibility for a visa as a displaced person, due to his exclusion under DPA § 2.[2] As a consequence, his entrance into the United States was illegal because he did not possess "a valid unexpired immigrant visa." 8 U.S.C. § 1181(a). Since the INA requires *lawful* admission for permanent residence five years prior to applying for naturalization, 8 U.S.C. § 1427(a)(1), defendant's subsequent naturalization was defective and must be revoked as illegally procured. 8 U.S.C. § 1451(a).

The Supreme Court has consistently held "that there must be strict compliance with all the congressionally-imposed prerequisites to the acquisition of citizenship." *Federenko, supra* 101 S.Ct. at 747, citing *Afroyim v. Rusk*, 387 U.S. 253, 87 S.Ct. 1660, 18 L.Ed.2d 757 (1967); *Maney v. United States*, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156 (1928); *United States v. Ness*, 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321 (1917). Most recently the Court ruled:

"Accordingly, inasmuch as petitioner failed to satisfy a statutory requirement which Congress has imposed as a prerequisite to the acquisition of citizenship by naturalization, we must agree with the Government that petitioner's citizenship must be revoked because it was 'illegally procured.'

\* \* \* \* \* \*

2. Under *Federenko*, DPA § 2 excluded from eligibility for visas any person who assisted the Germans in persecuting civilians. We conclude as a matter of law that, based on defendant's testimonial admissions, he so assisted the Germans.

"In the lexicon of our cases, one of the 'jurisdictional facts upon which the grant [of citizenship] is predicated,' *Johannessen v. United States, supra,* 225 U.S. [227] at 240, 32 S.Ct. [613] at 616 [56 L.Ed. 1066], was missing at the time petitioner became a citizen." *Federenko, supra* 101 S.Ct. at 752 (citations and footnote omitted).

Accordingly, defendant's defective admission into the United States dictates revocation of his citizenship.

■ The Government's second argument under the first prong of INA § 340(a) turns on section 10 of the DPA, which proscribed admissibility into the United States for any person who "willfully [made] a misrepresentation for the purpose of gaining admission into the United States as an eligible displaced person." 62 Stat. 1013. It is undisputed that in 1949 the United States Displaced Persons Commission submitted to the United States immigration authorities in Schweinfurt, Germany, a report which established defendant's eligibility as a displaced person. The Supreme Court described the procedure for determining eligibility as follows:

"The Act established an elaborate system for determining eligibility for displaced person status. Each applicant was first interviewed by representatives of the International Refugee Organization of the United Nations (IRO) who ascertained that the person was a refugee or displaced person. The applicant was then interviewed by an official of the Displaced Persons Commission, who made a preliminary determination about his eligibility under the DPA. The final decision was made by one of several State Department vice-consuls, who were specially trained for the task and sent to Europe to administer the Act." *Federenko, supra* at 742 (footnotes omitted).

The Commission report stated that defendant was a farmer in Poland from 1941 to 1944. No mention appears of defendant's full-time police service. In 1949, the report was incorporated by reference into defendant's application for an immigration visa. Defendant admits that he signed the visa application but denies that he read it. Dercacz Dep. at 69. Further, he cannot recall whether a translator was present or whether he personally communicated the information contained in the application. *Id.* at 70–71.

In view of defendant's lapse of memory, the presumption of regularity must apply. The law is clear that:

"The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."

*United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926); see 3 K. Davis, Administrative Law Treatise § 17.6 at 298–99 (2d ed. 1980).

Therefore, since defendant cannot recall the events which transpired, we must presume that the statements in the Commission report were based on an interview of defendant by a Commission official. Further, it is presumed that the United States immigration authorities complied with the Department of State regulations relevant to processing visa applications in 1949.

The relevant regulations, effective December 31, 1948, require that "the consular officer should be careful to see that before taking the oath the applicant fully understands the meaning of the excluded classes listed in the application." 22 C.F.R. § 42.-320. In addition, "only competent interpreters" were to be used "to avoid misunderstandings and misinterpretation." *Id.* § 42.324. Finally, the applicant was required to "verify his statements under oath or by affirmation before the consular officer." *Id.* § 42.325.

Thus, when defendant applied for an immigration visa, in the absence of convincing evidence to the contrary, it is presumed that the consular officer, at the minimum, explained the exclusion provisions of the application, used only competent translators, and required defendant to swear to the truth of the statements in the application. Defendant admits that he signed the

application for the purpose of gaining admission to the United States; in a procedure as solemn and significant as application for entry into the United States, defendant's signature must suffice to hold him responsible for the accuracy of the represented facts. To hold otherwise would disrupt the validity of the entire immigration process.

Therefore, the Court finds that no genuine issue of fact exists with respect to defendant's willful misrepresentation of his war-time service "for the purpose of gaining admission into the United States as a displaced person" under DPA § 10. Moreover, the misrepresentation was material because, as previously discussed, "disclosure of the true facts would have made the applicant ineligible for a visa." *Federenko, supra* 101 S.Ct. at 749. Hence, his admission into this country was invalid, and the subsequent grant of citizenship must be revoked under the "illegally procured" prong of INA § 340(a).

 We turn now to the second prong of § 340(a): fraudulent procurement of citizenship. At the outset, it must be noted that in paragraph 20 of defendant's answer to the complaint, he denies the allegations contained in paragraphs 38, 39, 41 and 42 of the complaint, but he fails to deny the allegation in paragraph 40, which states:

> "40. When defendant swore in his Application to File Petition for Naturalization and Statement of Facts for Preparation of Petition (INS Form N–400) that he had not committed crimes of moral turpitude (item no. 18), he concealed material facts and made willful misrepresentations. Complaint ¶ 40.

Therefore, the averments in paragraph 40 are admitted. Rule 8(d), F.R.Civ.P.

On the basis of defendant's admission that he concealed material facts and made willful misrepresentations in his application for naturalization regarding his commission of crimes of moral turpitude, the Government is entitled to summary judgment as a matter of law.

The materiality of defendant's morality cannot be questioned. INA § 316(a)(3), 8 U.S.C. § 1427(a)(3), states that "[n]o person ... shall be naturalized unless such petitioner ... has been and still is a person of good moral character ...." Defendant admits he misrepresented that he had not committed a crime of moral turpitude. If he had disclosed the truth he could not have been naturalized.

Since the evidence leaves no doubt that defendant procured his naturalization and citizenship by material misrepresentation, his citizenship must be revoked under INA § 340(a). Accordingly, the Government's motion is granted.

SO ORDERED.