Re Marsha K. SHEARER, Special Administratrix of the Estate of Bobby Gene Shearer, Deceased, and Barbara J. Pierce, Special Administratrix of the Estate of Darrold L. Pierce, Deceased

v.

**HOMESTAKE MINING COMPANY.**

No. CIV79–5122.

United States District Court, D. South Dakota.

Feb. 25, 1983.

---

Harlan A. Schmidt, Spearfish, S.D., Douglas E. Schmidt, Minneapolis, Minn., for plaintiffs.

Robert A. Amundson, Lead, S.D., for defendant.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

On February 4, 1983, this Court filed its Order granting summary judgment in favor of defendant. The following constitutes the court's memorandum opinion in connection with that Order.

This wrongful death case was filed by Plaintiffs Marsha K. Shearer and Barbara J. Pierce, on behalf of the estates of their respective decedents, Bobby Shearer and Darrold Pierce. Plaintiffs are citizens of the state of South Dakota. The defendant is the Homestake Mining Company, a corporation organized under the laws of the state of California. This Court has diversity jurisdiction over the action. 28 U.S.C. § 1332.

Decedents Shearer and Pierce were miners employed by the defendant at the Homestake Mine in Lead, South Dakota. On January 10, 1978, decedents were killed while acting within the scope of their employment as miners when a huge slab of rock broke from the ceiling of the mine shaft, or "stope", in which they were working and fell upon them. It is undisputed that plaintiffs applied for and collected worker's compensation benefits as a result of the death of miners Shearer and Pierce. Defendant filed its motion for summary judgment contending, as a matter of law, that the worker's compensation settlements constitute plaintiffs' sole and exclusive remedy. Defendant also contends that plaintiffs are barred from asserting this common law claim by virtue of their election of the remedy provided by worker's compensation.[1]

Plaintiffs deny that worker's compensation is their exclusive remedy, and instead contend that defendant Homestake committed an intentional tort upon decedents Shearer and Pierce. Plaintiffs further assert that the South Dakota worker's compensation statutes do not provide the exclusive remedy for work-related injuries caused by an employer's intentional tort. Indeed, SDCL 62-3-2 (1979) provides:

---

1. Because of the court's ruling on the issue of the exclusivity of coverage, the court need not address defendant's other claim concerning plaintiffs' election of the worker's compensation remedy.

"The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer or any employee, partner, *except rights and remedies arising from intentional tort.*" (Emphasis added.)

Thus, the issue before the court on defendant's motion for summary judgment is whether there exists a genuine issue of material fact to show that defendant committed an "intentional tort" within the meaning of SDCL 62–3–2.

On a motion for summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that the court may consider the pleadings, depositions, affidavits, and admissions on file. For purposes of this motion defendant adopts plaintiffs' factual allegations. In their complaint plaintiffs allege that defendant knew of several prior fatalities which occurred at the mine under similar circumstances, but nevertheless,

1) "intentionally engaged in mining practices without utilizing reasonably safe mining procedures which created unreasonably high risk of danger to plaintiffs' decedents . . .;" and,

2) "intentionally fail[ed] to properly train its employees in reasonable (sic) safe mining procedures and did further intentionally fail to provide plaintiffs' decedents . . . with engineering, geological and other technical data which was known to or available to, the defendant, thereby creating an unreasonably high risk of injury or death to plaintiffs' decedents. . . . "

Additionally, through discovery plaintiffs added the following specific factual allegations,

3) Defendant directed miners to enter the stopes to bar down loose rock, to slush and blast rock piles before adequately rock bolting the freshly blasted ceiling or "back" of the stope.[2] Defendant did so, knowing that,

a) rock bolting, when done properly, will avoid, if not eliminate injuries to miners due to ground falls;

b) on prior occasions, defendant was cited by MESA (Mining Enforcement and Safety Administration) for violations of mining safety rules regarding ground control and support of loose ground; and

c) defendant's policies violated other specific regulations promulgated by the Mine Safety and Health Administration (MSHA) regarding rock bolting.

4) Decedents' supervisor, Edgar Wiedenmeyer "held malice" toward Bobby Shearer. He directed decedents to bar loose rock, and to blast block holes under an area of the ceiling of the stope which was not rock bolted. Wiedenmeyer so instructed decedents even though he had not adequately examined the condition of the stope, and thus, failed to detect hazardous conditions which were readily observable.

### I.

The dual purpose of workmen's compensation legislation is to provide an injured employee a remedy which is both expeditious and independent of proof of fault, and secondly, to provide employers a liability which is limited and determinate. *Scissons v. City of Rapid City,* 251 N.W.2d 681 (S.D. 1977). In this manner the statute transfers from the worker, to the employer, and ulti-

---

**2.** After a stope has first been opened, but before any ore is removed, the miner tests the ceiling, or "back" of the stope by prying or "barring" down loose rock found there. The miners then drill holes into the ore body. Explosives set on the boulders or in the "block holes" are discharged, in order to break up the ore. The broken ore is removed with a "slush-er" which is a mechanical scoop that scrapes the ore into a vertical passageway and into cars. "Rock bolting" refers to the process of supporting the back and walls of the mine by drilling and setting five to eight foot long expansion bolts into the back or walls, to hold the rock in place.

mately to the public, a greater portion of the economic loss due to industrial accidents. *Oviatt v. Oviatt Dairy, Inc.,* 119 N.W.2d 649 (S.D.1963). By balancing the interests of the employee in a certain and speedy recovery, with the employer's interests in limited liability, the statute benefits employers, employees and the public as well.

It is generally agreed, however, that workmen's compensation provisions were not intended to shield an employer from common law liability for injuries he intentionally inflicted upon his employee. Consequently, most states remove intentional injuries from the exclusive coverage of the workmen's compensation acts. *See,* Larson, *The Law of Workmen's Compensation,* Vol. 2A, §§ 68.10 and 68.13 (1976); *Annotation,* 96 A.L.R.3d 1064. Several reasons support this exception. First, an intentionally inflicted injury is not "accidental," and therefore, falls outside the coverage of many statutes which provide compensation only for accidental injuries. Second, an employer is deemed to sever the employment relation by intentionally injuring his employee. Finally, intentional injuries do not "arise out of the employment" or are not considered risks of employment for which coverage exists. Nonetheless, an expansive interpretation of the intentional tort exception would thwart the purposes of the statutory scheme by eroding the exclusivity of both the liability and the recovery provided by workmen's compensation.

An expansive interpretation of the exception to the exclusivity provision of SDCL 62–3–2 would also violate a well-settled canon of statutory construction. The South Dakota Supreme Court has stated repeatedly that worker's compensation laws are remedial in character and must be liberally construed to provide coverage, even when a worker is attempting to avoid coverage. *South Dakota Medical Service v. Minnesota Mutual Fire & Casualty Co.,* 303 N.W.2d 358 (S.D.1981).

## II.

Of those jurisdictions which provide an exception to the exclusive coverage of workmen's compensation similar to SDCL 62–3–2, the overwhelming majority preserve the common law liability of the employer only with respect to genuine intentional injuries. *Larson, supra,* at § 68.13, p. 13–5. This strict standard requires the employee to allege and to prove an "actual intent to injure" on the part of the employer. *Id.* Defendant urges the court to adopt this standard as the basis for interpreting SDCL 62–3–2.

The discussion in *Larson* concerning the general exception for "intentional injuries" is consistent with the traditional interpretation of the term "intentional tort" outside the area of workmen's compensation. In describing intentionally tortious conduct, Dean Prosser states:

"Intent is the word commonly used to describe the desire to bring about the physical consequences [of an act] .... Intent, however, is broader than a desire to bring about physical results. It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does." Prosser, *Law of Torts,* § 8 (4th ed. 1971).

Likewise, the Restatement of Torts 2d, § 8A, comment (a), states that "intent" refers to the consequences of an act rather than to the act itself. "The word 'intent' ... denotes[s] that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* at p. 15–16. In cases outside the area of workmen's compensation, courts require the allegation and proof of the actor's intent to injure the claimant as an element of an intentional tort cause of action. *Wager v. Pro,* 603 F.2d 1005 (D.C.Cir.1979); *Shinabarger v. United Aircraft Corp.,* 381 F.2d 808 (2nd Cir.1967), *aff'g,* 262 F.Supp. 52 (D.Conn.1966); *Starling v. Seaboard Coast Line Ry.,* 533 F.Supp. 183 (S.D.Ga.1982).

Based upon this definition of an intentional tort, defendant contends that summary judgment should be granted in its favor. First, defendant argues that plain-

tiffs failed to allege that Homestake, or any of its employees, desired to cause the injury or death of decedents. More precisely, defendant argues that plaintiffs failed to allege defendant intentionally did acts, or intentionally failed to do acts that defendant knew or believed were substantially certain to cause harm to decedents. *See, e.g., Brown v. P.L. & Sons Painting, Inc.,* 680 F.2d 1111 (5th Cir.1982); *Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357 (E.D. Pa.1982).

Plaintiffs oppose the motion for summary judgment, relying upon the expansive view of the intentional injury exception taken in *Mandolidis v. Elkins Industries, Inc.,* 246 S.E.2d 907, 908 (W.Va.1978), 96 A.L.R.3d 1035. In that case the court construed West Virginia Code § 23–4–2, which preserves an employee's common law right of action against his employer "if injury or death result[s] to any employee from the deliberate intention of the employer to produce such injury or death." The *Mandolidis* court reasoned that worker's compensation supplanted the common law tort system only with respect to industrial accidents caused by negligence or gross negligence. Wilful, wanton, and reckless misconduct, however, are more culpable because they require a subjective realization of the risk of injury to another by the actor's conduct. Thus, the court agreed that the "deliberate intention" exception included acts which constitute intentional torts, as defined by Prosser and the Restatement of Torts, 2d. But the court extended the scope of the exception from exclusive worker's compensation coverage to include injuries caused by an employer's wilful, wanton, or reckless misconduct.

On this basis, plaintiffs request the court to hold: 1) that the intentional tort exception of § 62–3–2 does not require the alle-gation or proof of the employer's actual intent to injure, but requires only that the employer intentionally do the act which happens to cause injury or death;[3] and (2) that the intentional tort exception includes wilful, wanton, or reckless "conduct undertaken with a knowledge and appreciation of a high degree of risk to another." Defining "intentional tort" in this manner, plaintiffs conclude genuine issues of fact exist which preclude the entry of summary judgment against them.

■ This Court concludes that the South Dakota Supreme Court would reject the expansive rule of *Mandolidis.* Instead, the Court believes the South Dakota Legislature purposefully selected the distinct legal concept of intentional tort, and intended that term to have its commonly understood meaning. Thus, it is insufficient for an employee to allege that the employer intentionally did the act which happened to cause an injury or death. Nor is it sufficient for the employee to allege that the employer knew and appreciated the high degree of risk to others by his conduct. Wilful, wanton or reckless misconduct is not an intentional tort.

"[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent, and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classified as an intentional wrong. In such cases the distinction between intent and negligence obviously is a matter of degree. Apparently, the line has been drawn by the courts at the point where the known danger ceases only to be a forseeable risk which a reasonable man would avoid, and becomes a

---

**3.** In their Trial Memorandum, at p. 16, plaintiffs argued that the South Dakota Legislature purposefully selected for SDCL 62–3–2 the language "intentional tort by accident." But § 62–3–2 does not now and never did contain that language. Secondly, plaintiffs argued that the phrase "intentional tort" in § 62–3–2 refers *back* to the clause "personal injury or death by accident," thereby referring to intentional acts which cause unintended or accidental results. Although an earlier version of SDCL 62–3–2 contained the phrase "personal injury or death by accident" the words "by accident" were deleted by the Legislature. *See,* 1978 South Dakota Session Laws, ch. 370 § 2.

substantial certainty." Prosser, *supra,* § 8, at 32; *Accord,* Rest. Torts, 2d, § 8A, comment (b).

The *Mandolidis* decision has been described as a "distinctly out of line holding," 2A Larson, *supra,* § 68.13, supp. at 65, and has been expressly rejected by other courts. *See, Houston v. Bechtel Associates Professional Corp.,* 522 F.Supp. 1094 (D.D.C.1981); *Great Western Sugar Co. v. District Court,* 610 P.2d 717 (Mont.1980). Sound reasoning supports those decisions. If an action at law were allowed as a remedy for injuries caused by an employer's wilful, wanton, or reckless misconduct, many cases now cognizable solely under worker's compensation would also be prosecuted outside that system. Now the focus of the inquiry in cases of work-related injuries is whether the injury arose out of and in the course of employment. If the "intentional tort" exception was expanded as plaintiffs request, the focus would be upon the degree of risk of injury and the state of knowledge of the employer and the employee regarding the dangerous conduct or condition which caused the injury. This result undermines the balance of interests maintained by the worker's compensation system. First, it would thwart the goal of the system to provide employers relative immunity from liability at law. Second, it would deny many employees the swift and certain compensation they now receive under the system. The system originally required employees to surrender their right to a potentially larger recovery in a common law action for the wilful or reckless misconduct of employers, in return for expeditious recovery under worker's compensation. Employees disappointed with worker's compensation recovery would be encouraged to seek additional compensation in a common law action, increasing the role of the courts in resolving industrial accident disputes.

■ For these reasons, this Court holds that to recover for an intentional tort under SDCL 62–3–2, a plaintiff must allege and prove that the employer intended to injure the employee. This burden is met by allegations and proof that the employer desired to cause the consequences of his act, or believed that the consequences were substantially certain to result from it. This Court must now determine whether summary judgment is proper in view of this strict standard of recovery.

### III.

■ The Eighth Circuit Court of Appeals has repeatedly emphasized its antipathy toward the drastic remedy of summary judgment. It should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy. *Snell v. United States,* 680 F.2d 545, 547 (8th Cir.1982). The evidence must be viewed in the light most favorable to the nonmoving party and the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the facts. Yet, summary judgment constitutes an essential procedure for disposing of actions in which there is no genuine issue as to any material fact. The Court of Appeals recognizes the remedy's salutary purpose of avoiding useless and time consuming trials. *Butler v. MFA Life Insurance Co.,* 591 F.2d 448, 451 (8th Cir. 1979).

■ Rule 56(e) also places a burden upon the nonmoving party. When a motion for summary judgment is made and supported the party opposing the motion may not rest on the allegations of his pleadings, but must demonstrate by receivable facts that a real, not a formal controversy exists for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930 (8th Cir.1981); *McCormick v. Ross,* 506 F.2d 1205 (8th Cir.1974). Plaintiffs failed to meet this burden. On December 9, 1982, this Court ordered plaintiffs to file a response to the second motion for summary judgment, and allowed plaintiffs nearly a month in which to do so. Contrary to both Rule 56(e) and Local Rule 8(D), District of South Dakota Rules of Practice, plaintiffs filed no response, and requested no extension of time in which to respond. The discovery deadline had passed and plaintiffs had been given nearly three years to develop their case. Rule 56(e) provides that in

the absence of a response by the nonmoving party, "summary judgment, if appropriate shall be entered against him."

■ Plaintiffs' counsel apparently explains the failure to respond by urging that the denial of the first motion for summary judgment became the law of the case. Clearly, this conclusion is in error, especially where a second or renewed motion is based upon substantial discovery of facts not on file at the time of the first motion. *See, Middle Atlantic Utilities Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380 (2nd Cir.1968). Nor can counsel be heard to claim they were denied an adequate opportunity to present their case. In addition to filing no response, counsel made no request for a hearing or for oral argument on the second motion until one week after the Court filed its order granting the motion. Rule 56(c) does not mandate a hearing, and one was not required when the file contains substantial legal memoranda and discovery matters, and when no request for a hearing was made prior to the ruling. *Ailshire v. Darnell*, 508 F.2d 526, 528 n. 5 (8th Cir.1974); *Benson v. Matthews*, 554 F.2d 860 (8th Cir. 1977); *Parish v. Howard*, 459 F.2d 616 (8th Cir.1972).

Volumes of reported decisions on this precise issue establish that this is a classic case for disposition by summary judgment. *See, e.g., Penton v. Southern Shipbuilding, Inc.*, 667 F.2d 500 (5th Cir.1982); *Brown v. P.S. & Sons Painting, supra.* In this Circuit alone, two district courts summarily dismissed cases based upon the insufficiency of allegations of an intentional tort. In *Phifer v. Union Carbide Corp.*, 492 F.Supp. 483 (E.D.Ark.1980) Circuit Judge Arnold, sitting by designation, dismissed a plaintiff's complaint alleging injuries sustained as a result of Union Carbide's intentional acts. In a concise and well-reasoned decision, Judge Arnold held that plaintiff's pleadings failed to allege the actual, specific, and deliberate intent to injure required to support a claim of an intentional tort. *Id.* at 485–486. Similarly, *Hulne v. International Harvester Co.*, 496 F.Supp. 849 (D.N.D.1980) was a wrongful death case in which Judge Benson granted summary judgment in favor of defendants. Citing *Schlenk v. Aerial Contractors, Inc.*, 268 N.W.2d 466 (N.D. 1976), the court held that plaintiff failed to allege the "actual intent to injure" necessary to avoid the exclusive coverage of the North Dakota Workmen's Compensation Act.[4]

The allegations which form plaintiffs' claim under the intentional tort exception are these;

a. That defendant intentionally engaged in unsafe mining practices and procedures;

b. That defendant failed adequately to inspect ground conditions in the mine to insure that proper testing and ground control practices were followed;

c. That defendant intentionally failed to train employees in reasonably safe mining procedures;

d. That defendant intentionally directed employees and decedents to engage in mining practices which violated written company policy and federal mining safety regulations;

---

4. Although the South Dakota Supreme Court has not addressed this issue, the Seventh Judicial Circuit Court, State of South Dakota, granted summary judgment in favor of a defendant-employer in *Ver Bouwens v. Hamm Wood Products,* CIV82–378 (7th Jud.Cir., Order dated July 26, 1982). In that case an employee was injured while operating a "swing cut" saw at defendant's sawmill. The court held that under SDCL 62–3–2 worker's compensation was the employee's exclusive remedy. In rejecting the *Mandolidis* analysis, the court held that plaintiff failed to allege an "intentional tort" under § 62–3–2, in the absence of an allegation that the employer actually intended to harm plaintiff. Plaintiff's allegations that, 1) defendant intentionally operated a dangerous instrumentality; 2) defendant permitted and directed plaintiff to operate the swing cut saw, knowing of its dangerous condition; and 3) defendant knew and appreciated the high risk of danger to employees, all failed to state a claim of an intentional tort under South Dakota law. The Eighth Judicial Circuit Court, State of South Dakota, however, denied a motion for summary judgment, following the *Mandolidis* decision, in *Ahl v. Wright,* CIV79–302 (8th Jud. Cir. Order dated October 28, 1980). Both state cases currently are on appeal to the South Dakota Supreme Court.

e. That defendant intentionally failed to provide decedents with engineering, or geological data which was known to or available to defendant;

f. That decedent's supervisor, Edgar Wiedenmeyer "held malice" toward decedent Shearer and directed decedents to bar loose rock in the stope under an area of the ceiling which had not been rock bolted;

g. That these acts and omissions created extremely hazardous conditions and a high risk of danger to decedents which defendant knew and appreciated.

■ It is clear that plaintiffs did not allege that defendant intended to injure decedents. As a matter of law, plaintiffs failed to state a cause of action for an intentional tort because the pleadings, affidavits and depositions create no genuine issue of fact to show that defendant consciously committed certain acts which defendant actively desired and believed were substantially certain to cause injury to decedents. In the absence of these essential elements, plaintiffs' other factual allegations do not state a cause of action for an intentional tort.

Paragraph (a) constitutes a claim that Homestake intentionally created an unsafe workplace by virtue of its improper and unreasonably dangerous mining practices. Courts have consistently rejected this allegation as insufficient to support a claim of an intentional tort, *Love v. Flour Mills of America,* 647 F.2d 1058 (10th Cir.1981); *Keating v. Shell Chemical Co.,* 610 F.2d 328 (5th Cir.1980); *Sanford v. Presto Mfg. Co.,* 92 N.M. 746, 594 P.2d 1202 (N.M.1979), even when it was additionally alleged that the employer deliberately disregarded a dangerous condition which had caused prior, similar injuries to employees. *Provo v. Bunker Hill Co.,* 393 F.Supp. 778 (D.Idaho 1975). The allegations contained in paragraph (b) are duplicative of allegations made elsewhere regarding the maintenance of an unsafe workplace and the failure to enforce the use by miners of proper ground control procedures.

Courts have also granted summary judgment dismissing complaints which allege intentional failure to train employees in performing dangerous tasks, as do plaintiffs in paragraph (c). *Phifer v. Union Carbide Corp.,* 492 F.Supp. at 485; *Kittell v. Vermont Weatherboard, Inc.,* 417 A.2d 926 (Vermont 1980); *Great Western Sugar Co. v. District Court,* 610 P.2d at 717. Furthermore, the use of the word "intent" by plaintiffs in stating their claims "is not a talisman that can change the allegations into colorable claims of true intentional torts." *Keating v. Shell Chemical Co.,* 610 F.2d at 332. In paragraph (d), plaintiffs allege that defendant deliberately disregarded federal mining safety regulations. Employees have frequently asserted this breach as a basis for a claim of an intentional tort. The courts just as frequently hold that an employer's deliberate violation of federal or state safety regulations will not constitute an intentional act for purposes of eluding the exclusive workmen's compensation remedy. *Brown v. P.S. & Sons Painting, Inc.,* 680 F.2d 1111 (5th Cir.1982) (OSHA regulations); *Houston v. Bechtel Assoc. Professional Corp.,* 522 F.Supp. 1094 (D.D.C.1981); *Johns-Manville v. Contra Costa Superior Court,* 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948 (1980).

Paragraph (e) contains the allegation that Homestake intentionally failed to disclose the results of engineering or geological tests conducted in the area of the stope which collapsed upon decedents. Plaintiffs claim these tests contained information showing Homestake officials that the ore body on the "back" of the stope was "foliated", or formed a horizontal fold of relatively unsupported ore. Other courts, however, have concluded that an employee failed to state a claim of an intentional tort based upon allegations that an employer disregarded scientific data revealing a workplace hazard, *Petruska v. Johns-Manville,* 83 F.R.D. 39 (E.D.Pa.1979), or that an employer knew of a hazardous condition in the workplace, but failed to warn the employee-claimant and directed him to work in the hazardous area unaware of the dangerous condition. *Prescott v. U.S.,* 523 F.Supp. 918

**558**

(D.Nev.1981); *Copeland v. Johns-Manville Products,* 492 F.Supp. 498 (D.N.J.1980); *Austin v. Johns-Manville Sales Corp.,* 508 F.Supp. 313 (D.Maine 1981).

Plaintiffs' allegations (a) through (e) are similar to those made in *Kennecott Copper Corp. v. Reyes,* 75 Nev. 212, 337 P.2d 624 (1959). In *Kennecott* parents of a deceased employee brought a wrongful death action against the employer. Decedent was killed in a slide at the employer's open pit mine. There was evidence that the employer had foreseen and expected that a slide would occur in the future, and the court so assumed. The complaint alleged that the employer's actions in ordering the employee to continue his work below the threatened slide, without any warning to him, and without taking any steps for his safety constituted reckless, wilful and wanton misconduct. The court held that worker's compensation was plaintiff's sole remedy, where it was "not contended that [the employer] had any deliberate intent to kill or injure the decedent, or any other employees...." *Id.* 337 P.2d at 626.

 Paragraph (f) contains an allegation of a different character. Therein it is alleged that decedents' supervisor "held malice" toward decedent Shearer. No claim is made that the supervisor held any bad feeling toward decedent Pierce. The affidavit of Randy Flanagan forms the basis for the allegations of "malice," though other deposition testimony indicates Shearer and Wiedenmeyer disliked each other. Flanagan also stated in his affidavit that "sending the deceased miners to work in an area which was not rock bolted manifested said malice." But any ambiguity concerning Flanagan's testimony in this respect was cured by his subsequent deposition testimony.[5] In his deposition, Flanagan explained that by the word "malice," he

meant "extreme animosity." "[Wiedenmeyer] didn't like [Shearer]." (Depo. p. 39). Flanagan further testified that he did not believe Wiedenmeyer would have sent *any* miner, including Shearer, to work in a stope which he knew was hazardous and likely to cause injury. (Depo. p. 43). By sending decedents into the stope to drill and blast block holes, he was merely assigning decedents to do what was the common practice throughout the mine at the time of the accident. (Depo. p. 43). Wiedenmeyer would have assigned any other miners to do the same tasks, regardless of whether he liked or disliked them. (Depo. p. 44). If Wiedenmeyer directed decedents to proceed without rock bolting the ceiling of the stope, he was merely following the procedure commonly practiced throughout the mine. (Depo. p. 67–68). Flanagan himself followed the same procedures. (Depo. p. 43). Furthermore, Flanagan did not believe Wiedenmeyer knew that the stope in which the groundfall occurred was particularly dangerous. (Depo. p. 75). Finally, Flanagan was asked these questions, and gave these answers:

Q. ... "As I understand what you testified to, you do not know of anything or have any information available to you which would lead you to believe that Ed Wiedenmeyer intentionally caused the death of these individuals?

A. No.

Q. Or do you know of anyone else in Homestake that would?

A. Individually? No." (Depo. p. 87).

Flanagan's testimony does not create a genuine issue of fact to show that Wiedenmeyer, or any other Homestake employee, intentionally injured decedents. The evi-

---

5. When a witness has given testimony both by affidavit and by deposition, the two forms should be considered on a motion for summary judgment, but greater reliability is usually attributed to the deposition. Wright & Miller, *Federal Practice & Procedure, Civil,* §§ 2722, 2738; *Office Supply Co., Inc. v. Basic/Four Corp.,* 538 F.Supp. 776 (E.D.Wis.1982). Summary judgment may be granted based upon the deposition testimony if the court is satisfied that the issue potentially created by the affidavit is not genuine. *Id.* (cites omitted). Flanagan's deposition testimony establishes that he did not use the word "malice" in its legal sense to refer to "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury...." Black's Law Dictionary 862 (5th ed. 1979).

dence of personal animosity between Wiedenmeyer and Shearer is insufficient. In *Silkwood v. Kerr-McGee Corp.*, 667 F.2d 908 (10th Cir.1981), a suit was brought on behalf of a deceased employee of Kerr-McGee. It was alleged that the decedent died as a result of plutonium contamination from defendant's nuclear fuel processing plant. The evidence showed that Kerr-McGee supervisors knew that decedent was attempting to gather evidence of Kerr-McGee's negligent operations. There also was evidence that decedent was unhappy with a reprimand she had received and wanted to embarrass Kerr-McGee. On appeal from a jury verdict against Kerr-McGee, the Tenth Circuit Court of Appeals held that "evidence that Kerr-McGee employees might have disliked [decedent] and her evidence-gathering activities and that plutonium could and did escape the plant is not enough to support a finding that Kerr-McGee operatives intentionally exposed [decedent] to contamination. 667 F.2d at 915. In the absence of evidence of intentional contamination, the court held that the trial court was required to grant judgment n.o.v. in favor of Kerr-McGee. Likewise, in this case, evidence that Wiedenmeyer and Shearer disliked each other is insufficient to support a finding that Wiedenmeyer intentionally injured Shearer. Plaintiffs submitted no receivable facts in response to the motion to controvert Flanagan's testimony that Wiedenmeyer's animosity toward Shearer did not include an intent to injure.[6]

Finally, the allegation in paragraph (g) fails, as a matter of law, to meet the elements of an intentional tort. This allegation is based upon plaintiffs' belief that the term "intentional tort" includes conduct undertaken with a knowledge and appreciation of a high degree of risk to another.[7] But a high risk or probability of harm is not equivalent to the substantial certainty without which an actor cannot be said to intend the harm in which his act results. Plaintiffs did not allege or show that defendant desired bringing about decedents' injury or death. While it is foreseeable that if a groundfall occurred in the stope decedents would be injured, this simply does not constitute a showing that defendant *knew* or believed the ceiling would collapse and thus intended to harm decedents. *See, Brown v. P.S. & Sons Painting,* 680 F.2d at 1114.

For the foregoing reasons, this Court holds that plaintiffs failed to establish a genuine issue of material fact concerning the requisite intent of defendant to injure or harm decedents. Therefore, plaintiffs failed to state a claim of an intentional tort and defendant is entitled to judgment as a matter of law. Workmen's compensation is plaintiffs' exclusive remedy for the death of miners Shearer and Pierce.

---

**6.** Perhaps a greater defect of paragraph (f) is that there is no allegation that Homestake intended, commanded, directed or authorized Wiedenmeyer to commit an injurious act. In the absence of these claims, most courts hold that an employer is not liable for the intentional tort of a mere foreman or supervisory employee. *See, Larson, supra,* §§ 68.21 and 68.-23; *Bryan v. Jeffers,* 103 N.J.Super. 522, 248 A.2d 129 (1968).

**7.** In their Trial Memorandum, at p. 20, plaintiffs cite the Rest.Torts 2d, § 500, comment (a). But that section describes *reckless* conduct and plaintiffs disregard the distinction made by the Restatement at § 500, comment (f) between recklessness and intentional misconduct.