David W. POOLE

v.

**MARLIN DRILLING CO., INC.
and Tenneco, Inc.**

**Civ. A. No. 83–1106.**

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Sept. 11, 1984.

Roy S. Halcomb, Broussard, Bolton & Halcomb, Alexandria, La., for plaintiff.

James E. Diaz, Gary P. Kraus, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for defendants.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

VERON, District Judge.

This matter comes before the court on the motion of a defendant, Marlin Drilling Co., Inc. for summary judgment in its favor dismissing the Jones Act and general maritime tort claims brought against it by David W. Poole. Marlin also moves to strike the memorandum and affidavit submitted by the plaintiff in opposition to Marlin's motion for summary judgment.

Marlin contends that the plaintiff's opposing memorandum and affidavit should be stricken as untimely under Local Rule 10(f). As this matter has been held under advisement for some time and as Marlin has responded ably to the plaintiff's late submissions, the court can find no prejudice to Marlin from the late filing. Marlin also attacks the affidavit as a late attempt to create a genuine issue of fact by way of conclusory factual assertions. Yet the court can give appropriate weight to the contents of the affidavit without striking the affidavit in its entirety. Accordingly, the motion to strike the memorandum and the affidavit is DENIED.

■ In its motion for summary judgment, Marlin seeks to establish that Poole is not a seaman as a matter of law. Although summary judgment in a Jones Act case is rarely appropriate and even a marginal claim of seaman's status ordinarily should go to the jury, it is proper in some cases to rule as a matter of law that a worker is not a seaman. *E.g., Prinzi v. Keydril Co.,* 738 F.2d 707, at 708 (5th Cir.1984); *White v. Valley Line Co.,* 736 F.2d 304, 305 (5th Cir.1984); *Buras v. Commercial Testing & Engineering Co.,* 736 F.2d 307, 309 (5th Cir.1984). A defendant's motion for summary judgment must be denied if factual disputes exist as to (1) whether the injured worker was assigned permanently to a vessel (or group of vessels) or whether the worker performed a substantial part of his work on the vessel (or group of vessels), *and* (2) whether the worker was employed in a capacity that contributed to the operation or function of the vessel or to the accomplishment of its mission. *Prinzi,* at 709; *Offshore Co. v. Robison,* 266 F.2d 769 (5th Cir.1959). Here, Poole cannot satisfy the first leg of the *Robison* test, and summary judgment against him on seaman's status is therefore appropriate.

For the purposes of this motion, the facts can be summarized as follows. David Poole began working for Marlin in December of 1978 on a drilling rig, the Marlin 9, that was placed on various fixed offshore drilling platforms. Poole dep. 8, 11. Whenever drilling operations would be completed on a particular platform, the Marlin 9 drilling crew would begin living on

a boat while dismantling the rig and loading it and its appurtenances onto a barge for transport to another fixed platform. Poole dep. 16–17. During these operations, the drilling crew did no work on the boat they ate and slept on; they merely quartered there because their regular living quarters had been moved off the platform onto the barge. Poole dep. 17, 10–21; Fitzgerald dep. 64. Occasionally, a roustabout (Poole was a roughneck) might go onto the transport barge and "spot" materials being loaded onto the barge. Dupont dep. 35–36. Throughout the operations, the driller supervised the drilling crew. Poole dep. 30.

Poole suffered the injuries of which he complains here on May 10, 1982. Drilling operations on the rig had ceased approximately a week prior to the day of accident. Poole dep. 19; Fitzgerald dep. 37. The drilling crew had been living on the boat for a period of from one to five days, as the rig and living quarters had already been loaded on the barge. Poole dep. 17–20; Fitzgerald dep. 38; Dupont dep. 6–7. On the day of the accident, Poole and the rest of the crew were to dismantle a Marlin crane that had been bolted to the Tenneco platform and load the crane onto the barge. Poole was injured when the sections of the crane boom that he was working on fell to the deck of the platform.

May 10, 1982 was also a crew-change day. Poole was scheduled to return onshore for his seven days off on this date. Poole dep. 22; Fitzgerald dep. 44. The crew taking over for the next seven days was to complete the loading, ride with the boat to the next platform, and offload and assemble the rig on the new platform. If he had not been injured, Poole would have returned to work offshore in the normal course of events seven days later on May 18, 1982. By that date, the regular living quarters had been placed on the new platform and the drilling crew had been living on the platform for three days. The drilling crew that came on duty on May 18th offloaded and assembled the drilling derrick. Fitzgerald dep. 44–45.

To qualify as a seaman on the basis of a permanent assignment to a vessel, a worker must have more than a transitory connection with a vessel or specific group of vessels. *Prinzi*, at 709. A platform worker who performs work aboard a vessel will not qualify as a seaman if most of his work aboard the vessel is only incidental to his responsibilities concerning drilling operations. *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1346 (5th Cir.1980). In *Longmire*, the Fifth Circuit found that the platform worker was not permanently assigned to an associated vessel on facts that are quite similar to those in the present case. As is the case here, the *Longmire* claimant was working at a time when drilling operations had ceased and the rig was being dismantled for transport to another platform. 610 F.2d at 1345. As is the case here, the *Longmire* claimant was assisting in dismantling the rig and loading equipment on the vessel. *Id.* Indeed, the facts were far stronger in many respects in *Longmire* than they are here. The *Longmire* claimant was actually assigned to maintenance tasks aboard the vessel; he was injured while stowing the vessel's anchor chain. Poole was not assigned to perform any tasks aboard the vessel and was injured while dismantling drilling equipment on the platform. *Longmire* therefore indicates that Poole cannot establish the requisite permanent attachment here. If a platform worker involved in dismantling a drilling rig for transport does not satisfy the permanency requirement even though assigned to vessel-related maintenance tasks aboard the vessel, then, *a fortiori* another platform worker engaged in the same basic operation who performs most or all of his work on the platform itself cannot satisfy the permanency requirement. In both situations, the workers' primary responsibilities concern the drilling operations on the rig and platform, and their connection to a vessel is only incidental to this work.

The fact that Poole slept and ate aboard the boat for a number of days does not establish a permanent attachment to the vessel. This one factor has never been

determinative of seaman status standing alone. *See Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 247 n. 15 (5th Cir.1983). For example in *Keener v. Transworld Drilling Company*, 468 F.2d 729 (5th Cir.1972), the fixed-platform drilling crew *always* slept and ate aboard a nearby tender because there were no living quarters on the platform. The Fifth Circuit held that this connection to the vessel did not confer seaman's status on the platform workers, even though they did maintenance work on the vessel when drilling operations were interrupted. Here, the relationship to the vessel is much more tenuous. The drilling crew slept and ate aboard the vessel only for the week or so that it took to move their normal living quarters to another rig. This temporary living arrangement makes Poole's connection to the vessel no less incidental to his duties as a platform worker. The nature and location of Poole's occupation taken as a whole, and not a fortuitous living arrangement, stand as the central concern here.

Similarly, the fact that the drilling crew traveled on the boat to the next platform does not aid Poole. The crew traveled on the boat not as workers assigned to the vessel, but as workers assigned to the rig that they were traveling with. In any event, Poole himself would not have traveled with the vessel; he was due to take his seven days off before the vessel ever set sail for the new platform.[1] Poole can hardly claim to be permanently assigned to a vessel when the length of his work assignment is linked not to the duration of the vessel's mission or to the completion of a particular job aboard the vessel, but instead to the normal crew-change schedule established for drilling operations.

*Longmire* also instructs that Poole cannot qualify as a seaman on the basis of his performing a substantial amount of his work on either the boat or the barge. He performed absolutely no work on the boat and, at best, would go on to the barge only to "spot" a piece of drilling equipment being loaded onto the barge. (The only deposition testimony on this point indicates that Poole did not "spot" items, see Dupont dep. 36–37.) The *Longmire* claimant, on the other hand, was assigned to several tasks aboard the vessel in addition to loading drilling equipment. As Poole's vessel work, if any, would be far more irregular and discontinuous than that performed by the *Longmire* claimant, it is apparent that Poole did not perform a significant part of his work aboard the vessel.

Accordingly, the motion by Marlin Drilling Co., Inc. for summary judgment is GRANTED to the extent that David W. Poole cannot maintain a Jones Act claim against the defendant. A sufficient evidentiary basis does not exist at this time, however, to hold that the plaintiff does not have a claim under general maritime tort law against the defendant Marlin Drilling Co., Inc. Accordingly, the motion is DENIED to the extent that the defendant seeks dismissal of the plaintiff's general maritime tort claims.

---

1. Poole does not create a genuine issue of material fact on this point by stating in a late-filed affidavit that his "tour of duty with the vessel was for the duration of the vessel's mission...." Affidavit of David W. Poole, 2. Such a conclusory statement of ultimate fact is of no avail on a motion for summary judgment. *See United States v. W.H. Hodges & Co., Inc.*, 533 F.2d 276, 278 (5th Cir.1976). In light of the prior deposition testimony, *see* Poole dep. 22; Fitzgerald dep. 44, the Court is satisfied that the issue potentially created by the affidavit is not a genuine one. *See also Shearer v. Homestake Mining Co.*, 557 F.Supp. 549 (D.S.D.1983), *United States v. Dercacz*, 530 F.Supp. 1348 (E.D.N.Y.1982).