## BEAUCHAMP v DOW CHEMICAL COMPANY

Docket No. 75578. Argued February 7, 1986 (Calendar No. 10). Decided December 23, 1986.

Ronald Beauchamp and Karen Beauchamp brought an action in the Iron Circuit Court against the Dow Chemical Company, seeking damages for physical and mental injuries suffered by Ronald Beauchamp while employed by Dow as a result of exposure to "agent orange," claiming intentional misrepresentation and fraudulent concealment of potential danger, intentional assault of Ronald Beauchamp, intentional infliction of emotional distress, breach of a contract to provide safe working conditions, and loss of consortium. The court, V. Robert Payant, J., granted summary judgment for Dow on the ground that the complaint failed to state a claim on which relief could be granted because the plaintiffs' exclusive remedy was provided by the workers' compensation act. The Court of Appeals, R. M. MAHER, P.J., and GRIBBS, J. (J. H. GILLIS, J., dissenting), holding that a true intentional tort, one in which the injury as well as the act was intended, and claims for breach of contract were not barred by the exclusive remedy provision of the act, reversed and remanded for trial on the intentional infliction of emotional distress and contract claims, but affirmed the dismissal of the remaining counts (Docket No. 69429). The defendant appeals.

In an opinion by Justice LEVIN, joined by Chief Justice WILLIAMS and Justices CAVANAGH and ARCHER, the Supreme Court *held*:

An action by an employee for an intentional tort by an employer is not barred by the exclusive remedy provision of the workers' compensation act. Whether a tort was intentional is to be determined by applying the substantial certainty standard, i.e., whether the employer intended the act that caused the

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 52 *et seq.*, 230.

Liability of employer with regard to inherently dangerous work for injuries to employees of independent contractor. 34 ALR4th 914.

What conduct is willful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064.

injury and knew that the injury was substantially certain to occur. The exclusive remedy for claims involving injuries covered by the act, even though cast in the form of a breach of contract, is provided by the act.

1. In creating the workers' compensation system, the Legislature addressed compensation for accidental injuries, injuries resulting from ordinary work performed in an ordinary manner as well as from mishaps. Prior to its enactment, employers were liable for intentional torts committed against employees. Because the act addressed accidental and not intentional injuries, an employee's preexisting remedy for intentional torts by an employer was not affected. The only intentional actions explicitly addressed in the act are an employee's self-inflicted injuries.

2. Selection of the appropriate test is difficult. The problem with the substantial certainty test is that it is difficult to draw the line between substantial certainty and substantial risk. In applying the substantial certainty test, some courts have confused intentional, reckless, and even negligent misconduct, and therefore blurred the line between intentional and accidental injuries. The true intentional tort test (whether the employer truly intended the injury as well as the act) keeps the distinction between intentional and accidental injuries clear, but would appear to allow employers to injure or even kill employees and yet be liable to pay only workers' compensation so long as there was no specific intent to injure the worker. In Michigan, the substantial certainty standard is adopted. So as to avoid misapplication of the test, substantial certainty should not be equated with substantial likelihood.

3. The question whether Karen Beauchamp's claim of loss of consortium is barred will depend on resolution of Ronald Beauchamp's claim of intentional tort, requiring reversal of the trial court's dismissal of her claim.

4. An allegation by a worker that an injury resulted from an employer's failure to provide safe working conditions is essentially a claim that the injury was a result of the employer's negligence and as such is barred by the exclusive remedy provision of the act, even where the claim is cast in the form of some kind of a breach of contract.

Justice BOYLE, joined by Justices BRICKLEY and RILEY, concurring in part and dissenting in part, stated that the standard to be applied in determining whether an employer's intentional conduct is outside the immunity of the exclusive remedy provision of the workers' compensation act is whether the employer intended the injury which occurred or acted despite a belief

that the consequences of its actions were substantially certain to follow.

Affirmed in part, reversed in part, and remanded.

140 Mich App 699; 364 NW2d 286 (1984) affirmed in part and reversed in part.

1. WORKERS' COMPENSATION — INTENTIONAL TORTS — EXCLUSIVE REMEDY.

An action by an employee for an intentional tort by an employer is not barred by the exclusive remedy provision of the workers' compensation act; whether a tort was intentional is to be determined by applying the substantial certainty standard, i.e., whether the employer intended the act that caused the injury and knew that the injury was substantially certain to occur (MCL 418.131; MSA 17.237[131]).

2. WORKERS' COMPENSATION — NEGLIGENCE — CONTRACTS — EXCLUSIVE REMEDY.

An allegation by a worker that an injury resulted from an employer's failure to provide safe working conditions is essentially a claim that the injury was a result of the employer's negligence and as such is barred by the exclusive remedy provision of the workers' compensation act, even where the claim is cast in the form of some kind of a breach of contract (MCL 418.131; MSA 17.237[131]).

*Steve J. Polich, P.C.* (by *James D. Masur, II*), for the plaintiffs.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Bruce L. Dalrymple* and *Scott C. Strattard*) and *McNeil, Mouw, Celello & Torreano* (by *John A. Torreano*) for the defendant.

Amici Curiae:

*Davidson, Breen & Doud, P.C.* (by *Richard J. Doud*), for Eaton Corporation.

*Bodman, Longley & Dahling* (by *Theodore Souris* and *Kim Michael Lavalle*) for Michigan Manufacturers Association.

*Conklin, Benham, McLeod, Ducey & Ottaway,*

*P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association.

*Crary E. Grattan,* General Counsel, and *Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Richard D. McLellan, William J. Perrone,* and *Frederick J. Hood*) for Michigan State Chamber of Commerce.

LEVIN, J. The questions presented are whether the exclusive remedy provision of the Workers' Disability Compensation Act bars an employee from commencing a civil action against his employer where the employee alleges (1) that the employer committed an intentional tort against the employee, and (2) that the employer breached its contract to provide a safe workplace.

I

Plaintiff Ronald Beauchamp was employed for two years as a research chemist by defendant Dow Chemical Company. He applied for workers' compensation benefits, alleging impairment of normal bodily functions caused by exposure to tordon, 2, 4-D, and 2, 4, 5-T ("agent orange").

Ronald Beauchamp and his wife, Karen, thereafter commenced this civil action against Dow. The complaint alleged that Ronald Beauchamp had been physically and mentally affected by exposure to "agent orange" and that Karen Beauchamp had suffered loss of consortium.[1] The complaint further alleged that Dow intentionally misrepresented and fraudulently concealed the potential danger, that Dow intentionally assaulted Ronald Beauchamp,

---

[1] Ronald Beauchamp was last employed by Dow in 1968. He applied for workers' compensation benefits in 1981. He commenced this action in April, 1982. A statute of limitations issue has not been raised on this appeal.

that Dow intentionally inflicted emotional distress, and that Dow breached its contract to provide safe working conditions. The circuit court granted summary judgment for Dow on all four counts on the basis that the complaint failed to state a claim on which relief could be granted. It does not appear that there had been any discovery.

The decision of the Court of Appeals, reversing in part and affirming in part, was "premised on . . . [its] understanding that an allegation of a 'true' intentional tort is not within the exclusive remedy provision of the [Workers' Disability Compensation Act]."[2] A "true" intentional tort, as defined by the Court of Appeals, is one in which the injury, as well as the act, was intended. Apparently applying this distinction, the Court of Appeals reversed the judgment of the circuit court and remanded the cause for trial on the intentional infliction of emotional distress count. The Court of Appeals also reversed and remanded for trial on the breach of contract claim, stating that a contract claim was not barred by the exclusive remedy provision of the act. The Court of Appeals affirmed the dismissal by the circuit court of the other two tort counts.

We conclude that the contract claim is barred by the exclusive remedy provision and remand for further proceedings on the intentional tort claims.

II

In reviewing a dismissal for failure to state a claim, we accept as true all well-pleaded facts[3] and determine whether the claim is so clearly unen-

---

[2] *Beauchamp v Dow Chemical Co*, 140 Mich App 699, 702; 364 NW2d 286 (1984).

[3] *Bielski v Wolverine Ins Co*, 379 Mich 280, 283; 150 NW2d 788 (1967).

forceable as a matter of law that no factual development can possibly justify a recovery.[4]

## III

The origin and evolution of the workers' compensation act indicate that the legislation, including the exclusive remedy provision, was designed to provide an alternative compensation system respecting accidental and not intentional injuries.

### A

In 1911, the Legislature created a "commission of inquiry to make the necessary investigation, and to prepare and submit a report . . . setting forth a comprehensive plan and recommending legislative action providing compensation for accidental injuries or death of workmen arising out of and in the course of employment . . . ."[5]

The commission's "creation resulted from a wide dissatisfaction with the present system of employers' liability for negligence as to employes."[6] At the end of the nineteenth century, "the industrial accident rate had reached alarming proportions."[7] As plants grew larger and more dangerous, injuries became more frequent, and proof that injury was due to the fault of the employer without contributory fault of the employee was more diffi-

[4] See *Martin v Michigan,* 129 Mich App 100, 105; 341 NW2d 239 (1983).

[5] 1911 PA 245.

[6] Report of the Employers' Liability and Workmen's Compensation Commission of the State of Michigan (1911), p 5 (hereinafter cited as State Commission).

[7] Note, *"Intentional torts under workers' compensation statutes: A blessing or a burden?"* 12 Hofstra L R 181, 183 (1983); see also Larson, Workmen's Compensation Law (desk ed), § 5.20, p 2-14.

cult.[8] An increasing number of injuries were left uncompensated.[9] Dean Prosser wrote that between seventy and ninety-four percent of the injuries were uncompensated.[10] A national commission found that workers recovered for fifteen percent of their injuries even though seventy percent were caused by employer negligence or workplace conditions.[11]

Negligence by the employer was not enough to assure recovery by an employee injured in an accident, because of three defenses: assumption of risk, the fellow-servant doctrine, and contributory negligence. The Michigan commission reported that these "three defences have been the subject of much criticism, and the discussion that has arisen concerning them plays an important part in the agitation for a change in the system of employers liability."[12] These defenses, it is noteworthy, did not apply to intentional torts, only to negligence. The problem addressed in the report was reparations for "accidental"[13] injury under the existing system of negligence liability. There is no discussion in the report of intentional torts by employers.

---

[8] Herrold, "Challenging the exclusivity of the workers' compensation remedy—The Ohio experience" in *1986 ABA National Institute on Workers' Compensation: A Review of Costs, Emerging Developments and Remedies,* p 133.

[9] Note, "*Exceptions to the exclusive remedy requirements of workers' compensation statutes,* 96 Harv L R 1641 (1983).

[10] Prosser, Torts (4th ed), § 80 at 526, 530, n 32.

[11] See also Siegel, "Enactment of the workmen's compensation law in Michigan," *Workmen's Compensation in Michigan* (1962), p VI-A-4.

[12] State Commission, n 6 *supra* at 6. See also Siegel, n 11 *supra* at VI-A-11. (At the 1907 Michigan constitutional convention, thirty-three petitions were presented dealing with either the doctrines of contributory negligence or of fellow servant.)

[13] Throughout the State Commission's report, the issue is liability for industrial "accidents." State Commission, n 6 *supra* at 8, 9, 12, 32, 33, 40.

B

The workers' compensation act enacted in 1912 put into effect the proposals made by the commission. The act provided compensation for the "accidental injury to or death of employes."[14] Although workers' compensation coverage was made elective for those in the private sector, the "so-called right of choice to come or not to come under this statute was something less than real" because whether the employer elected coverage or not the three common-law defenses were abolished for employment injuries.[15] If the employer elected coverage, however, he was not subject "to any other liability whatsoever, save as herein provided for the death of or personal injury to any employe for which death or injury compensation is recoverable under this act . . . ."[16] The Legislature had essentially rewritten the law governing accidental injuries in employment by addressing the criticisms of the existing system of liability for negligence in employment.

The employer was given two choices on how to handle accidental injuries: choose the workers' compensation system and provide a certain remedy that did not consider the negligence of either the employer or the employee or reject the workers' compensation system and risk uncertain remedies determined by whether or not the employer was negligent regardless of negligence of the employee or fellow servants. When the system became compulsory for all employers in 1943,[17] both

---

[14] 1912 (Ex Sess) PA 10, preamble.

[15] McAuliffe, "The Michigan workmen's compensation act—The first twenty-five years," *Conference Commemorating the 50th Anniversary of Workmen's Compensation in Michigan* (1962), p VI-B-1. 1912 (Ex Sess) PA 10, § 1.

[16] 1912 (Ex Sess) PA 10, § 4.

[17] For the list of current exceptions see MCL 418.115; MSA 17.237(115).

employer and employee negligence had ceased to be a consideration. For accidents, an insurance scheme had replaced the former system of employer liability based on negligence. Legislatures in this and other states had come to view industrial accidents as the natural accompaniment of the industrial system.[18] The costs of accidental injury were to be borne by industry.[19]

C

Among the most litigated questions following the passage of the act was the definition of accident. The question was whether an accident included an unexpected injury that occurred without a mishap as well as an unexpected injury caused by a mishap: Would an employee who slipped a disc picking up a barrel recover or just the employee hit by the barrel falling off a shelf? In *Adams v Acme White Lead & Color Works*, 182 Mich 157; 148 NW 485 (1914), this Court held that an unexpected injury (lead poisoning) that occurred without a mishap was not compensable. The decision concerned an occupational disease, but the holding was extended to "strain" cases.[20]

In 1937, an occupational disease amendment was adopted. In 1943, the act was again amended, and the words "accident" and "accidental" were removed in approximately fifty places in the act.[21]

[18] Siegel, n 11 *supra* at VI-A-10; *Mackin v Detroit-Timkin Axle Co,* 187 Mich 8, 14; 153 NW 49 (1915).

[19] *Id.*

[20] *Sheppard v Michigan National Bank,* 348 Mich 577, 578-579; 83 NW2d 614 (1957).

[21] See *Hagopian v Highland Park,* 313 Mich 608; 22 NW2d 116 (1946); Plant, "The Michigan workmen's compensation act—The second twenty-five years," *Workmen's Compensation in Michigan,* n 15 *supra,* p VI-C-3. *Sheppard,* n 20 *supra* at 616 (EDWARDS, J., concurring).

The word "accident," however, still remained in the title, and in a few places in the text. The deletion of the word "accidental" generated confusion in the case law. On one side, it was suggested that the change was merely cosmetic, that is, the removal of the word "accidental" or "accident" was merely to clarify that recovery also could be had for occupational diseases.[22] On the other side, it was suggested that the removal of the word "accident" in the 1943 amendments "completely wiped out the requirement of 'accidental' injury as our Court had theretofore erroneously construed it."[23] The "erroneous" interpretation was that an "accidental" injury did not include the unexpected result—the slipped disc when lifting a barrel—as well as the unexpected cause, the barrel falling off the shelf and hitting the employee. In 1955, this Court in *Sheppard v Michigan National Bank,* 348 Mich 577; 83 NW2d 614 (1957), resolved the controversy, ruling that the act covered both types of injuries.

Whatever may have been the reason for the removal of the term "accident" from the act, it was not removed because the Legislature intended to expand the scope of the exclusive remedy provision to include intentional torts:

> The problem dealt with by these amendments was that posed by industrial injuries resulting from ordinary work performed in an ordinary manner and previously held noncompensable because "non-accidental" under the Court's previous definition.[24]

Intentional torts were not at issue.

---

[22] See, e.g., *Hagopian v Highland Park,* n 21 *supra* at 621.

[23] *Sheppard,* n 20 *supra* at 587. See, e.g., *Anderson v General Motors Corp,* 313 Mich 630; 22 NW2d 108 (1946).

[24] *Sheppard,* n 20 *supra* at 618.

IV

There are no decisions of this Court on the question whether the exclusive remedy provision precludes an action by an employee who alleges that his employer committed an intentional tort against him. The Court of Appeals is divided on the question. A number of panels of the Court of Appeals have concluded that the exclusive remedy provision of the act does not bar an. employee's intentional tort action against the employer. *Beauchamp v Dow Chemical Co,* 140 Mich App 699; 364 NW2d 286 (1984); *Barnes v Double Seal Glass Co,* 129 Mich App 66; 341 NW2d 812 (1983); *Kissinger v Mannor,* 92 Mich App 572; 285 NW2d 214 (1979); *Schutt v Lado,* 138 Mich App 433; 360 NW2d 214 (1984); *McKinley v Holiday Inn,* 115 Mich App 160; 320 NW2d 329 (1982); *Burgess v Holloway Construction Co,* 123 Mich App 505, 508; 332 NW2d 584 (1983). At least one panel has concluded that such an action is barred. *Genson v Bofors-Lakeway, Inc,* 122 Mich App 470, 478; 332 NW2d 507 (1983), lv den 419 Mich 956 (1984).

We conclude that actions for intentional torts are not barred. Before the workers' compensation act was enacted, employers were liable for intentional torts they committed against their employees. The workers' compensation act, as explained above, was a comprehensive restructuring of the mechanism for dealing with accidental injuries. The Legislature did not intend "that the exclusive remedy section of the act be construed to preclude a plaintiff's recovery for injuries suffered in an intentional tort . . . ." *Kissinger v Mannor, supra* at 577; *McKinley v Holiday Inn, supra.*

The statement in *Genson* that "[a]s no language in the statute suggests a separate exception for intentional torts, we can only create such an ex-

ception through theorization about legislative intent . . ."[25] is based on a false assumption. The reason there is "no language [that] suggests a separate exception for intentional torts," is that the Legislature was addressing accidental, not intentional, injuries. Thus it was the *Genson* Court that engaged in "theorization about legislative intent" concerning whether or not intentional torts are precluded by the act. Because the Legislature was addressing accidental, not intentional, injuries, an employee's preexisting remedy for intentional torts by the employer was not affected by the act absent clear expression to the contrary.

The only nonaccidental acts explicitly addressed by the act are an employee's self-inflicted injuries. The act states that "[i]f the employee is injured by reason of his intentional and wilful misconduct, he shall not receive compensation under the provisions of this act."[26] Dow suggests that because this type of intentional misconduct by employees was excluded from the coverage of the act intentional torts by employers were meant to be included within the coverage of the act and also within the ambit of the exclusivity provision.

We find this to be a misreading of legislative history and intent. The commission did propose excluding from coverage a worker's self-inflicted injury. According to the commission a workers' compensation system would provide compensation for "every accident irrespective of fault, unless the fault be wilful on the part of the employe."[27] Nevertheless, the discussion of an employee's intentional act is framed—as is the entire report—in terms of negligence law. In a passage in the bill it

[25] *Genson v Bofors-Lakeway, Inc,* 122 Mich App 470; 332 NW2d 507 (1983).

[26] MCL 418.305; MSA 17.237(305).

[27] State Commission, n 6 *supra* at 32.

proposed to the Legislature, the commission expressed its conclusion about self-inflicted injuries as follows: "[I]t shall not be a defence . . . That the employe was negligent unless and except it shall appear that such negligence was wilful."[28] This passage was adopted word-for-word in the act. The Legislature was concerned with apparent negligence that was in truth an act of attempted fraud. The inherently contradictory phrase, "negligence was wilful," is unfortunate, but the meaning was clear.

The Legislature was not, in 1912, considering the law governing intentional torts by employers. To avoid confusion, the Legislature made it clear that by removing the employer's defense in negligence, and easing recovery by employees, it was not making the employer liable for injuries employees wilfully inflicted on themselves.[29]

The accident requirement assures that neither the employee nor the employer can use the workers' compensation act as a means of benefiting from their own intentional misconduct. Excluding recovery for self-inflicted injuries because self-inflicted injuries are not accidents is consistent with preventing employers from using the exclusive remedy provision of the act to shield them from civil suits for their intentional torts, because intentional torts are also not accidents. The employee will not be heard to claim his injury was an accident when the employee intentionally injured himself. Employers will not be heard to suggest that the exclusive remedy provision shields them from civil actions for intentional torts they commit

[28] *Id.* at 40.

[29] "[T]he phrase 'irrespective of the fault of any party,' " as provided in the California Constitution, art XX, § 21, has been construed as empowering the legislature to grant benefits unhampered by common-law tort concepts of negligence, *Magliulo v Superior Court,* 47 Cal App 3d 760, 768; 121 Cal Rptr 621 (1975).

against their employees, because, as Professor Larson has explained, "If the incident gets into court not as a compensation claim but as a damage suit by the employee against an employer-assailant, it is the employer who must affirmatively plead the exclusiveness of the act as a defense. To do this he must allege that the injury was an accident—and how can he do this, when he himself has deliberately produced it?"[30]

Dow correctly points out that this Court has found deliberate assaults by coemployees or third persons to be compensable under the act.[31] Apparently, the Court found the assaults to be accidents.[32] As Professor Larson explained, "[T]he early difficulty presented by the argument that such an injury was the result of intention as distinguished from accident was overcome by the simple expedient of viewing the affair from the point of view of the victim rather than of the assailant, since from the victim's point of view the assault was an unexpected and untoward mishap."[33] Professor Larson has suggested that in deciding whether an incident was an accident, the incident should always be viewed from the perspective of the person seeking the protection of the act:[34] When the employee seeks to recover benefits, the question is whether the injury was an accident from the employee's perspective; if the employer seeks to impose the accident requirement as a defense, the question is whether the injury was an

---

[30] 2A Larson, Workmen's Compensation Law, § 68.12, p 13-8.

[31] See *Wyrwa v Murray Corp of America,* 274 Mich 670; 265 NW 497 (1936); *Schultz v Chevrolet Motor Co,* 256 Mich 393; 239 NW 894 (1932).

[32] *Schultz,* n 31 *supra* at 394.

[33] 2A Larson, § 68.12, p 13-7.

[34] "[I]t is quite proper to analyze the incident in each type of action from the standpoint of the person having the burden of establishing his case or defense." 2A Larson, Workmen's Compensation, § 68.12, p 13-8.

accident from the employer's perspective. Once it is recognized that the accident requirement is examined from the perspective of the party seeking to benefit from the alleged accident, the apparent conflict raised by Dow is resolved.

Whether or not the injury was an accident from the employer's point of view would depend on whether the "employer has commanded or expressly authorized the assault . . . ."[35] If the employer did, the injury was not an accident, and the employer would be liable in a civil action for the intentional tort committed against the employee. When, however, the "person who intentionally injures the employee is not the employer in person nor a person who is realistically the alter ego of the corporation, . . . both the legal and the moral reasons for permitting a common-law suit against the employer collapse, and a substantial majority of modern cases bar a damage suit against the employer."[36] The employee's sole remedy against the employer would be the workers' compensation claim. The exclusivity provision of the workers' compensation act would not affect an intentional tort action against the coemployee.

Dow has argued that the workers' compensation act embodies a quid pro quo, and the employer's quid is absolute immunity from liability other than that provided for in the workers' compensation act. Taken out of context, the language of the exclusivity provision lends apparent support to Dow's position: "The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer."[37] Never-

[35] *Jablonski v Multack,* 63 Ill App 3d 908, 913; 20 Ill Dec 715; 380 NE2d 924 (1978) (quoting Larson, *supra*).

[36] *Id.* at 912.

[37] MCL 418.131; MSA 17.237(131). Before the 1972 amendment, the statute read, "Where the conditions of liability under this act exist,

theless, the legislative history indicates the quid pro quo concerned accidents; intentional torts by employers were never part of the bargain struck.

Turning our focus to theorization about what the Legislature would or might have done had it considered intentional torts when it was addressing the problem of accidents, we doubt that the Legislature would have included intentional torts within the ambit of the exclusivity provision. Including intentional torts within the exclusivity provision would mean the Legislature intended to limit substantially an employee's recovery for intentional injury inflicted by the employer. It would mean that the Legislature not only intended to limit the employer's liability, but also intended to allow "an intentional tortfeasor to shift his liability to a fund paid for with premiums collected from innocent employers."[38] Intentional misconduct would seem to be the type of behavior the Legislature would most want to deter and punish.[39] Including intentional torts within the exclusivity provision would in that sense be counterproductive.[40]

Because the Legislature intended to limit and diffuse liability for accidental injury by no means suggests the Legislature intended to limit and diffuse liability for intentional torts. Accidents are an inevitable part of industrial production; intentional torts by employers are not.

In certain instances, there would be no remedy

the right to the recovery of compensation benefits, as provided in this act, shall be the exclusive remedy against the employer." See, generally, *Hoffman v Nat'l Machine Co*, 113 Mich App 66; 317 NW2d 289 (1982).

[38] *Collier v Wagner Castings Co*, 81 Ill 2d 229, 240; 41 Ill Dec 776; 408 NE2d 198 (1980).

[39] *Id., Jablonski*, n 35 *supra* at 913. *In re Johns-Manville Asbestosis Cases*, 511 F Supp 1229, 1233 (ND Ill, 1981).

[40] *Barnes v Double Seal Glass Co, supra; Garcia v Gusmack Restaurant*, 150 NYS2d 232 (1954).

at all under the Dow analysis for employees who were the victims of intentional torts. An employer, for example, who intentionally disfigured an employee without affecting the employee's ability to work would not be subject to liability under the workers' compensation act[41] or, under Dow's analysis, subject to civil suit.

V

In "most" states the exclusivity provision of the workers' compensation act does not preclude a civil action by an employee alleging an intentional tort by the employer.[42] In some of these states intentional tort actions have been explicitly excluded in the workers' compensation legislation itself.[43] In others, however, and these are most

[41] The act covers loss of earning capacity, not common-law damages. See *Hebert v Ford Motor Co*, 285 Mich 607, 610; 281 NW 374 (1938); see also Larson, n 7 *supra*, § 2.40, p 1-10.

[42] *Shearer v Homestake Mining Co*, 557 F Supp 549, 553 (D SD, 1983), aff'd *Shearer v Homestake Mining Co*, 727 F2d 707 (CA 8, 1984); Petramalo, "Employer total liability," *1986 ABA National Institute on Workers' Compensation*, p 167 ("[i]n most states, common-law suits alleging that the employer has 'intentionally' inflicted an injury or illness upon plaintiff employees will not be barred by the exclusivity principle"). Herrold, n 8 *supra* at 138 ("[a] majority of courts have held that an employer who deliberately harms his employee is not shielded from liability by the exclusivity of the particular jurisdiction's workers' compensation remedy").

There are some states that hold that common-law suits are precluded by the exclusivity provisions. See, e.g., *DeArman v Ingalls Iron Works Co, Inc*, 258 Ala 205; 61 So 2d 764 (1952); *Eason v Frontier Air Lines, Inc*, 636 F2d 293 (CA 10, 1981); *Nutt v E I duPont deNemours*, 441 A2d 226 (Del, 1982); *Nutt v A C & S, Inc*, 466 A2d 18 (Del, 1983); *Wilkinson v Achber*, 101 NH 7; 131 A2d 51 (1957); *Parker v Energy Development Corp*, 691 P2d 981 (Wy, 1984). Some states that have included intentional torts within the exclusivity provision have statutory provisions that call for additional compensation for intentional misconduct. See, e.g., *Johns-Manville Products Corp v Contra Costa*, 27 Cal 3d 465, 471; 165 Cal Rptr 858; 612 P2d 948 (1980). Before the additional compensation provisions were passed, "the law allowed an employee a choice of remedies if an injury was caused by an employer's gross negligence or willful misconduct."

[43] See, e.g., NJ Stat Ann 34:15-8 (New Jersey Workmen's Compensa-

relevant for our purposes, the courts have found that intentional tort actions can be brought even though there is an exclusivity provision and there is no statutory language explicitly allowing civil actions for intentional torts.[44]

The reasoning in many of these opinions is similar to our own. The decisions are based on the recognition that the "Workmen's Compensation Law deals not with intentional wrongs but only with accidental injuries,"[45] and an employer who inflicts an intentional tort on his employee cannot claim it is accidental.[46] In these cases the courts have manifested their collective unwillingness to include intentional torts by employers within the exclusivity provision when there is no evidence to support and no "sound reason" to conclude that the legislature intended to limit the liability of an

tion Act); SD Codified Laws Ann 62-3-2; Ky Rev Stat 342.015; La Rev Stat Ann, § 23:1032; Or Rev Stat 656.156; Wash Rev Code Ann 51.24.020; W Va Code, § 23-4-2; Ariz Rev Stat, § 23-1022; *Lavin v Goldberg Bldg Material Corp*, 274 AD 690, 693; 87 NYS2d 90 (1949), app den 275 AD 865; 89 NYS2d 523 (1949).

[44] *In re Johns-Manville*, n 39 *supra; Pleasant v Johnson*, 312 NC 710; 325 SE2d 244 (1985); *Blankenship v Cincinnati Milacron Chemicals*, 69 Ohio St 2d 608, 614-615; 433 NE2d 572 (1982); *Heskett v Fisher Laundry & Cleaners*, 217 Ark 350; 230 SW2d 28 (1950); *Mingachos v CBS, Inc*, 196 Conn 91; 491 A2d 368 (1985); *Boek v Wong Hing*, 180 Minn 470; 231 NW 233 (1930); *Austin v Johns-Manville Sales Corp*, 508 F Supp 313, 316 (Me, 1981) (interpreting Maine workers' compensation law). *Readinger v Gottschall*, 201 Pa Super 134; 191 A2d 694 (1963).

[45] See, e.g., *Lavin v Goldberg Bldg Material Corp*, n 43 *supra*. See also *Heskett v Fisher Laundry & Cleaners*, n 44 *supra; Mingachos v CBS, Inc*, n 44 *supra; In re Johns-Manville*, n 39 *supra; Blankenship v Cincinnati Milacron Chemicals*, n 44 *supra*.

[46] *Boek v Wong Hing*, n 44 *supra* at 471-472; *Heskett v Fisher Laundry & Cleaners*, n 44 *supra; Jablonski*, n 35 *supra*. Another line of cases take the approach that intentional torts do not arise out of and in the course of employment. See, e.g., *Blankenship*, n 44 *supra*. We believe, as does Larson, that the best explanation for excluding intentional torts is that the act is limited to accidental injuries. "The most fictitious theory . . . is that the assault does not arise out of the employment . . . ." 2A Larson, Workmen's Compensation Law, § 68.11, p 13-4.

intentional tortfeasor when it passed legislation directed at accidental injuries.[47]

Many of the arguments relied on by Dow to suggest intentional torts should be included within the exclusivity provision were made and rejected in these cases as well. Statutory amendments removing the word "accidental" were not understood to mean that intentional torts were covered. In Pennsylvania, for example, the workers' compensation act expressly covered only accidents.[48] In 1972, the act was amended to cover all injuries occurring in the course of employment.[49] The courts interpreting the amended provisions have noted that "[n]othing is said in any of them about deliberate acts or assaults by the employer."[50] Such amendments have been regarded as inelegant draftsmanship, to be construed—as other statutes expressly state—to extend coverage to "an injury to an employee which is causally connected with his employment and is the direct result of repetitive trauma or repetitive acts incident to such employment . . . ."[51]

The express exclusion of self-inflicted injuries in these acts has not been understood to suggest that intentional torts by employers are implicitly included.[52] The courts have also rejected the argument that because the law of the state allows employees to recover workers' compensation for physical assaults by fellow employees, an employer

---

[47] *Heskett*, n 44 *supra* at 352-356.

[48] *Koslop v Cabot Corp*, 631 F Supp 1494 (MD Pa, 1986).

[49] See Pa Stat Ann, tit 77, § 411(1) (Purdon, 1985).

[50] *Neal v Carey Canadian Mines, Ltd*, 548 F Supp 357, 378 (ED Pa, 1982), aff'd *Van Buskirk v Carey Canadian Mines, Ltd*, 760 F2d 481 (CA 3, 1985); *Jones v PMA Ins Co*, 343 Pa 411; 495 A2d 203 (1985).

[51] Connecticut statute quoted in *Mingachos*, n 44 *supra* at 491 A2d 373.

[52] See, e.g., *Boek v Wong Hing*, n 44 *supra* at 471-472; *Heskett v Fisher Laundry & Cleaners*, n 44 *supra* at 352-353.

can claim that intentional assaults are covered by
the exclusivity provision.[53]

## VI

Although a number of courts have agreed that
the exclusivity provision of a workers' compensa-
tion act does not preclude employees from bringing
intentional tort actions against their employers,
the courts have not been able to agree on a defini-
tion of "intentional" in this context. Some courts
have limited the recovery to so-called "true inten-
tional torts," that is, when the employer truly
intended the injury as well as the act. Other
courts have relied on the standard in the Restate-
ment of Torts, 2d, stating that when the employer
intended the act that caused the injury and knew
that the injury was substantially certain to occur
from the act, the employer has committed an
intentional tort.[54] The substantial certainty test
has apparently been extended by at least one state
to cover substantial likelihood of injury.[55]

### A

The Court of Appeals in the instant case de-

---

[53] See *Jablonski,* n 35 *supra* at 912.

[54] *Keating v Shell Chemical Co,* 610 F2d 328, 332 (CA 5, 1980);
*Bazley v Tortorich,* 397 So 2d 475, 482 (La, 1981); *VerBouwens v
Hamm Wood Products,* 334 NW2d 874, 876 (SD, 1983); *Mingachos v
CBS, Inc,* n 44 *supra,* 491 A2d 376; *Austin v Johns-Manville Sales
Corp,* n 44 *supra* at 317.

[55] *Jones v VIP Development Co,* 15 Ohio St 3d 90; 472 NE2d 1046
(1984).

It has been said, however, that a "high risk or probability of harm
is not equivalent to the substantial certainty without which an actor
cannot be said to intend the harm in which his act results." *Shearer,*
n 42 *supra* at 559; *Keating,* n 54 *supra* at 332; *Bazley,* n 54 *supra* at
481. Although a matter of degree, it is generally recognized that at
some point, the line has been crossed from intentional to reckless
misconduct, and therefore from intentional to accidental injury.

clared, "In order to allege an intentional tort outside the act, the plaintiff must allege that the employer intended the injury itself and not merely the activity leading to the injury."[56] A number of states have adopted a similar intentional tort test requiring an actual intent to injure. The case law in Arkansas is illustrative.

In *Heskett v Fisher Laundry & Cleaners Co,* 217 Ark 350; 230 SW2d 28 (1950), the Arkansas Supreme Court allowed an employee to bring a civil action for intentional tort against his employer for "a vicious, unprovoked, intentional and violent assault and battery . . . ."[57] In a later case, *Griffin v George's, Inc,* 267 Ark 91, 93; 589 SW2d 24 (1979), the court declared that "only if an employer acts with an actual, specific, and deliberate intent to injure may an employee sue the employer in common-law tort." An allegation in *Griffin* that the employer "recognized the substantial certainty that [an unguarded grain auger] would result in injury" did not contain the requisite degree of intent necessary to be classified an intentional tort for the purposes of workers' compensation law.[58]

## B

The "substantial certainty" line of cases defines intentional tort more broadly. An intentional tort "is not . . . limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the

---

[56] See also *Barnes, supra* at 80; *Schutt, supra* at 437.

[57] *Heskett, supra* at 356.

[58] See *Griffin v George's, Inc,* 267 Ark 91, 93; 589 SW2d 24 (1979).

result."[59] It does not matter whether the employer wishes the injury would not occur or does not care whether it occurs.[60] If the injury is substantially certain to occur as a consequence of actions the employer intended, the employer is deemed to have intended the injuries as well. The substantial certainty test tracks the Restatement definition of an intentional tort.[61]

The distinction between the substantial certainty intentional tort test and the "true" intentional tort test can become important in cases such as *Griffin* in which the facts were assumed, for the purpose of reviewing a trial court decision granting defendant's general demurer, to be as follows: An employee was mangled when he fell into an auger. The employer had ordered the protective grate removed. The surface near the auger "sloped toward the opening . . . and, since there was usually grain lying upon this surface, one coming near the opening could easily slip . . . ."[62] This violation of safety standards was extremely hazardous and the employer "recognized the substantial certainty that it would result in injury to an employee."[63] Nevertheless, the employer placed Griffin "in direct danger of injury . . . in spite of the fact that it was substantially certain that an employee in Griffin's position would be injured by reason thereof."[64] The court, using the true intentional tort test, concluded that the employer did not "desire to bring about the consequences of the

---

[59] *Bazley,* n 54 *supra* at 482; *Keating,* n 54 *supra* at 332; *Shearer,* n 42 *supra* at 553; *VerBouwens,* n 54 *supra* at 876.

[60] *Bazley,* n 54 *supra* at 481.

[61] Restatement Torts, 2d, § 8.

[62] *Griffin,* n 58 *supra* at 93.

[63] *Id.*

[64] *Id.*

act,"[65] and, as a result, the tort action was barred by the exclusivity provision of the workers' compensation statute.

Another case that might be decided differently had the standard been substantial certainty rather than true intent was *Serna v Statewide Contractors*, 6 Ariz App 12; 429 P2d 504 (1967). Two men were killed when a ditch caved in and buried them alive. In the five months preceding the disaster, inspectors had warned that "the sides of the ditch were not sloped properly, the side was sandy, more shoring was needed, and escape ladders should be placed every 25 feet." During that time a cave-in had occurred, burying one of the decedents up to his waist. All warnings were ignored. The court disallowed the action, finding that the act was not "done knowingly and purposely, with the direct object of injuring another." *Id.* at 15.

C

The recent *People v Film Recovery Systems* case decided in Illinois adds a new perspective to the different intentional tort standards.[66] The facts in the case were as follows: Film Recovery Systems went into the business of recovering silver from film negatives. This was done by placing the negatives into vats of cyanide. Hydrogen cyanide gas would bubble up from the vats and there was inadequate ventilation. The employer knew about the dangers. The labels on the chemicals being used contained adequate warnings; as a result, the employer hired only employees who could not speak or read English. The workers complained

[65] *Id.* at 96.

[66] Leviton, "Policy considerations in corporate criminal prosecutions after *People v Film Recovery Systems, Inc,*" *1986 ABA National Institute on Workers' Compensation: A Review of Costs, Emerging Developments and Remedies*, p 186.

about the fumes daily. In 1981, an inspector had warned that the operation had outgrown the plant. The employer's response was to move the execu- -tive offices while tripling the size of the operations. Eventually one worker died and several others were seriously injured because of hydrogen cyanide poisoning. The corporate officers were convicted of involuntary manslaughter.

The facts in this case are a good example of the type of employer conduct that would seem to meet the substantial certainty as well as a substantial likelihood of harm standard. It is questionable, however, whether even this outrageous conduct would constitute a "true intentional tort." The employer did not desire to injure or kill the employees, even though the employer knew with a substantial certainty that his conduct would injure the employees.[67]

### D

Selecting the appropriate intentional tort test is difficult. The problem with the substantial certainty test is that it is difficult to draw the line between substantial certainty and substantial risk.[68] In applying the substantial certainty test, some courts have confused intentional, reckless, and even negligent misconduct, and therefore blurred the line between intentional and acciden-

---

[67] We acknowledge that to convict these employers of involuntary manslaughter under Illinois law, the prosecution did not need to show that the employer intended to injure or kill the employees, or even that there was a substantial certainty that they would be injured or killed; all that needed to be shown was that the employer's acts "create[d] a strong probability of death or great bodily harm to that individual or another." Ill Ann Stat, ch 38, § 9-1.

[68] *Jones,* n 55 *supra; Bradfield v Stop-N-Go Foods, Inc,* 17 Ohio St 3d 58, 60; 477 NE2d 621 (1985) (Holmes, J., dissenting); *Nayman v Kilbane,* 1 Ohio St 3d 269, 271; 439 NE2d 888 (1982) (Holmes, J., dissenting).

tal injuries. The true intentional tort standard keeps the distinction clear.[69]

The problem with the true intentional tort test appears to be that it allows employers to injure and even kill employees and suffer only workers' compensation damages so long as the employer did not specifically intend to hurt the worker. The facts in the *Film Recovery Systems* case are a good example. Prohibiting a civil action in such a case "would allow a corporation to 'cost-out' an investment decision to kill workers."[70] *Blankenship v Cincinnati Milacron Chemicals*, 69 Ohio St 2d 608, 617; 433 NE2d 572 (1982) (Celebrezze, J., concurring).

We adopt the substantial certainty standard. In an effort to avoid the misapplication of that test illustrated by the Ohio line of cases (see n 55), we stress that substantial certainty should not be equated with substantial likelihood. The facts in *Serna* and *Film Recovery Systems* are examples of what would constitute substantial certainty.

## VII

The last remaining tort issue to be addressed is Karen Beauchamp's allegation that she had been deprived of a normal marriage relationship and suffered a loss of consortium. Had we found that

---

[69] Still a further complication is the possible difference between the standard or definition of intentional tort and the evidence that would constitute a prima facie case.

The question presented is a subset of a larger problem which the Legislature has failed to address, namely, compensation for a nondisabling injury, that is, an injury that does not affect the employee's ability to work—for example, sterilization, impotency, disfigurement. It would be appropriate for the Legislature to address this larger problem and general liability for toxic tort injury which is different in kind from a punch in the nose. The intentional tort standards governing liability for punches in the nose are not readily transferred to toxic torts.

[70] *Blankenship*, n 44 *supra* at 616-617 (Celebrezze, J., concurring).

Ronald Beauchamp's injuries were accidental and thus his civil action in tort was barred by the exclusivity provision, Karen Beauchamp's claims arising out of the injury to her husband would also be barred.[71] At this point, however, the injuries to Ronald Beauchamp might still be found to be the result of an intentional tort by Dow which means Karen Beauchamp still may recover if she has suffered a loss of consortium.[72] As we have indicated above, for the purpose of reviewing a trial court's decision to grant a defendant's motion for summary judgment, we accept as true all well-pleaded facts in the plaintiff's complaint. We therefore reverse the trial court's decision dismissing Karen Beauchamp's loss of consortium complaint.

### VIII

The second issue presented is whether the exclusivity provision of the workers' compensation act precludes a common-law civil action by an employee who alleges that his employer breached a contractual promise to provide safe working conditions.

A claim that an injury is caused by failure to provide safe working conditions is essentially a recasting in contract form of a claim that the employee was injured by the employer's negligence. It is not even a recasting in contract form of an intentional tort. The workers' compensation act provides a quid pro quo for accidental injury. Limited but certain compensation for accidental injuries caused by unsafe working conditions has

---

[71] *Balcer v Leonard Refineries, Inc,* 370 Mich 531, 533; 122 NW2d 805 (1963); *Bourassa v ATO Corp,* 113 Mich App 517, 520; 317 NW2d 669 (1982).

[72] *Montgomery v Stephan,* 359 Mich 33, 47; 101 NW2d 227 (1960). See also *Berger v Weber,* 411 Mich 1; 330 NW2d 424 (1981).

been substituted for the right to sue for accidental injuries caused by unsafe working conditions. Allowing a civil action as well as compensation for an injury caused by failure to provide safe working conditions would alter the balance struck by the legislation.

The trial court granted defendant's summary judgment motion regarding Beauchamp's contract claim. The Court of Appeals reversed relying on its decision in *Milton v Oakland Co.*[73] The Court of Appeals in *Milton* allowed a civil action for contract claims involving the right to recover for violations of the merit system, not for contract claims involving injuries covered by the workers' compensation act. The Court of Appeals misinterpreted the holding in *Milton.* An allegation that an injury resulted from an employer's failure to provide safe working conditions is exactly what is covered by the workers' compensation act. It is essentially a claim that the employee was injured by the employer's negligence. We hold that the "all-inclusive character of the exclusiveness principle results in barring actions for covered injuries even though the plaintiff casts his action in the form of a breach of some kind of contract."[74]

Remanded to the circuit court for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[73] 50 Mich App 279, 283-284; 213 NW2d 250 (1973).

[74] 2A Larson, Workmen's Compensation Law, § 65.38, p 12-23. It is noteworthy that the common-law obligation, whether in tort or in implied contract, and the statutory MIOSHA obligation to provide workplace safety are all obligations imposed by law. It is clear there is no private right of action for MIOSHA violations. See, e.g., *White v Chrysler Corp,* 421 Mich 192, 199; 364 NW2d 619 (1984). We think, therefore, it is questionable, apart from the exclusivity provision, whether a claim of a workplace safety violation that might have been actionable before MIOSHA would be presently actionable. To hold it to be actionable, would permit, somewhat by indirection, that which the MIOSHA does not allow.

Williams, C.J., and Cavanagh and Archer, JJ., concurred with Levin, J.

Boyle, J. (*concurring in part and dissenting in part*). I agree with Justice Levin's conclusion that injuries intentionally imposed upon employees by employers are outside the immunity of the workers' compensation exclusive remedy provision, MCL 418.131; MSA 17.237(131).[1] I also agree that for an intentional injury to escape the exclusivity bar, the plaintiff need not prove that the employer intended the actual injury which occurred. I write separately to clarify the proper standard of the substantial certainty test adopted by this Court in the instant case.

Most state courts have recognized an exception to the exclusive remedy provisions of workers' compensation acts in situations involving the intentional injury of an employee by an employer. See, generally, 2A Larson, Workmen's Compensation Law, § 68, pp 13-1 to 13-106. This exception, however, has generally been limited to circumstances involving an intentional assault by the employer on the employee when the employer acts *in person. Id.,* § 68.11. The most common examples are cases involving assault and battery. See, e.g., *Doney v Tambouratgis,* 73 Cal App 3d 448; 140 Cal

---

[1] MCL 418.131; MSA 17.237(131) provides:

The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer. As used in this section and section 827 "employee" includes the person injured, his personal representatives and any other person to whom a claim accrues by reason of the injury to or death of the employee, and "employer" includes his insurer, a service agent to a self-insured employer, and the accident fund insofar as they furnish, or fail to furnish, safety inspections or safety advisory services incident to providing workmen's compensation insurance or incident to a self-insured employer's liability servicing contract.

Rptr 782 (1977), vacated and aff'd on other grounds 23 Cal 3d 91; 151 Cal Rptr 347; 587 P2d 1160 (1979) (nude bar dancer attacked by employer after she refused to disrobe in employer's private office); *Schutt v Lado,* 138 Mich App 433; 360 NW2d 214 (1984) (employee imprisoned by employer in office, assaulted and battered).

As the instant case illustrates, once an exception to the workers' compensation exclusive remedy provision is acknowledged for intentional torts, the main issue is the type of "intentional" behavior which escapes the statutory bar. Under a rule described in Larson as "almost unanimous," § 68.13, p 13-8, most courts hold that the employer's injurious behavior must be genuinely intentional:

> [T]he common-law liability of the employer cannot, under the almost unanimous rule, be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury. [*Id.,* pp 13-8 to 13-9. Citations omitted.]

Larson explains some of the allegations which, falling short of actual intent to injure, fail to escape the exclusive remedy bar:

> Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, it still falls short of the kind of actual intention to injure that robs the injury of accidental character. [*Id.,* pp 13-22 to 13-26.]

What type of conduct, then, constitutes an "intentional wrong" that is outside the exclusivity provision? Under standard tort analysis, "intent" is more than an actual desire to achieve the injury which occurs:

> [I]ntent is broader than a desire or purpose to bring about physical results. *It extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.* The actor who fires a bullet into a dense crowd may fervently pray that the bullet will hit no one, but if the actor knows that it is unavoidable that the bullet will hit someone, the actor intends that consequence. [Prosser & Keeton, Torts (5th ed), § 8, p 35. Emphasis added.]

Similarly, § 8A of the Restatement of Torts, 2d, states:

> The word "intent" is used throughout the Restatement of this Subject to denote that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it.

Adopting the above definitions of "intent," I would hold that the exclusive remedy provision of the workers' compensation act does not bar civil suit where an employee alleges either that the employer intended the injury which occurred or that the employer acted despite the belief that the consequences were substantially certain to follow from what the employer did. As the New Jersey Supreme Court recently observed, the exclusive remedy provision should not be avoided for negli-

gence or gross negligence—"a virtual certainty" of injury must be proved. *Millison v E I duPont deNemours & Co,* 101 NJ 161, 178-179; 501 A2d 505 (1985). As Prosser & Keeton, *supra,* p 36, state:

> [T]he mere knowledge and appreciation of a risk —something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.

Similarly, comment f of the Restatement of Torts, 2d, § 500 describes the difference between recklessness and intentional conduct:

> Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. *However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.* [Emphasis added.]

I would remand this case to the trial court for consideration of whether the above standard is met by the complaint in this case.

BRICKLEY and RILEY, JJ., concurred with BOYLE, J.