**Panzy CALLADINE, individually and as Guardian of William Calladine, Plaintiff,**

v.

**DANA CORPORATION, a Virginia corporation, Defendant.**

**Civ. A. No. 87–CV–1739–DT.**

United States District Court, E.D. Michigan, S.D.

Feb. 29, 1988.

Barry P. Waldman, Detroit, Mich., for plaintiff.

Edward D. Plato, Farmington, Hills, Mich., for defendant.

### MEMORANDUM OPINION
### AND ORDER

WOODS, District Judge.

Plaintiff Panzy Calladine brings this action individually and as guardian of her husband William Calladine. On May 30, 1978, William was working for defendant Dana Corporation (Dana) at its plant in Ecorse, Michigan. After drinking at a water fountain, William was struck and seriously injured by a fork lift truck. He has been mentally impaired since the time of the accident. He seeks damages resulting from Dana's allegedly intentional assault, i.e., knowingly exposing him to a hazardous working condition without providing any warnings. Panzy Calladine seeks damages for loss of consortium.

Dana files two motions for summary judgment, claiming that plaintiff's claims are barred under (1) applicable statute of

limitations periods and (2) the Michigan Workers' Disability Compensation Act's exclusive remedy provision.

### 1. STATUTE OF LIMITATIONS

#### A. *William Calladine's Claim*

■ The statute of limitations for actions charging assault is two years. Mich. Comp.Laws § 600.5805(2). Unless tolled, the statute began to run at the time of the accident on May 30, 1978, and expired two years later. In this case the statute has been tolled. Michigan's disability savings provision applicable to William's assault claim, *id.* § 600.5851, provides that an individual mentally incompetent at the time a cause of action accrues may file the claim before the applicable limitations period runs *after* the disability is removed. Since William remains mentally incompetent, the statute has not begun to run even though the injury occurred almost nine years prior to the filing of this suit. *See Paavola v. St. Joseph Hosp. Corp.*, 119 Mich.App. 10, 14–15, 325 N.W.2d 609 (1982) (statute permits tolling for a "period potentially many decades long").

Dana nonetheless argues that the circumstances of this case are unique and dictate that the statute of limitations be deemed to have begun running when the first suit was filed. According to Dana, William's rights have been capably handled since at least 1981, when a guardian and an attorney began caring for his rights. In other words, asserts Dana, William has been in a far better position legally than the average individual who must attend to his or her legal rights without such assistance. Regardless of the persuasiveness of Dana's arguments, Michigan courts have consistently held otherwise. In a string of decisions, the Michigan Court of Appeals has found that the statute does not begin to run even with the appointment of a guardian, *see, e.g., Wallisch v. Fosnaugh*, 126 Mich.App. 418, 426, 336 N.W.2d 923 *leave to appeal denied*, 418 Mich. 871

(1983); *Paavola*, 119 Mich.App. at 14, 325 N.W.2d 609, or next friend, *Rittenhouse v. Erhart*, 126 Mich.App. 674, 679, 337 N.W.2d 626 (1983), *modified on other grounds*, 424 Mich. 166, 380 N.W.2d 440 (1986), on behalf of a mentally incompetent person.[1]

#### B. *Panzy Calladine's Claim*

■ Unlike William's assault claim, Panzy's loss of consortium claim does not fall within the disability savings provision. Mich.Comp.Laws § 600.5851(1) extends the period of limitations for mentally incompetent individuals or those "claiming under" such individuals. Michigan courts nevertheless hold that a person bringing a loss of consortium claim maintains a separate and independent cause of action and does not claim under an injured mentally incompetent person—even if the claims arise from the same set of circumstances. *Wold v. Jeep Corp.*, 141 Mich.App. 476, 367 N.W.2d 421, *leave to appeal denied*, 423 Mich. 859 (1985); *Walter v. City of Flint*, 40 Mich. App. 613, 199 N.W.2d 264 (1972).

### 2. INTENTIONAL TORT EXCEPTION TO THE MICHIGAN WORKERS' COMPENSATION ACT'S EXCLUSIVE REMEDY PROVISION

■ Dana contends that William's intentional assault claim is barred by the exclusive remedy provision of the Michigan Workers' Disability Compensation Act (Act), Mich.Comp.Laws § 418.131, *amended by* 1987 Mich.Pub. Act No. 28. The provision states that an employee's recovery of workers' compensation benefits shall be the employee's exclusive remedy against the employer. Various panels of the Michigan Court of Appeals have disagreed as to whether the Michigan legislature intended an exception for intentional torts. *E.g., Eide v. Kelsey–Hayes Co.*, 154 Mich.App. 142, 163–64, 397 N.W.2d 532 (1986), *leave*

---

1. The fact that an individual has retained an attorney offers some evidence that the individual is mentally competent, but not conclusive evidence. *Davidson v. Baker–Vander Veen Construction Co.*, 35 Mich.App. 293, 192 N.W.2d 312, *leave to appeal denied*, 386 Mich. 756 (1971).

Dana offers the fact that William has been represented by an attorney to show that William's legal rights have been capably handled. Dana does not argue that William is mentally competent.

*to appeal granted on other grounds,* 428 Mich. 873, 402 N.W.2d 468 (1987); *Leonard v. All–Pro Equities, Inc.,* 149 Mich.App. 1, 5–6, 386 N.W.2d 159 (1986). The Michigan Supreme Court in *Beauchamp v. Dow Chemical Co.,* 427 Mich. 1, 398 N.W.2d 882 (1986), resolved the dispute by recognizing the following intentional tort exception to the exclusive remedy provision:

> An intentional tort "is not ... limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result." It does not matter whether the employer wishes the injury would not occur or does not care whether it occurs. If the injury is substantailly certain to occur as a consequence of actions the employer intended, the employer is deemed to have intended the injuries as well.

*Id.* at 21–22, 398 N.W.2d 882 (footnotes omitted).

Less than two months later, a bill was introduced in the Michigan senate in part to clarify the exclusive remedy provision in light of the *Beauchamp* decision. As introduced, the bill required an employee to show that an employer intended both the acts giving rise to the injury *and* the resulting injury. Senate Bill 67, § 132(1); Summary of Michigan Senate Bill 67, Senate Analysis Section (Feb. 2, 1987) (unofficial legislative history). Proponents of the bill characterized situations permitting employees to pursue such claims against employers as "extreme cases." Opponents argued that the bill would do away with the *Beauchamp* exception to the exclusive remedy provision, unduly restricting the rights of injured employees to seek redress against employers and drastically skewing the workers' compensation system in favor of employers. *See* First, Second & Third Analyses to Senate Bill 67, Senate Fiscal Agency (Mar. 23, Apr. 16 & May 26, 1987) (unofficial statements of legislative intent).

In reaching what appears to be a compromise between the two positions, the Michigan legislature amended the exclusive remedy provision to permit intentional tort claims against an employer, but requiring an employee to meet a higher threshold than set forth in *Beauchamp:*

> Sec. 131(1) The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

1987 Michigan Pub. Act No. 28 (effective May 14, 1987). As enacted, the amendment permits an employee to sue an employer for an on-the-job injury if, and only if, there is a deliberate act by the employer, committed with the specific intent to injure an employee. Specific intent is shown where an employer had actual knowledge that its act was certain to injure an employee and willfully disregarded that knowledge.

The last sentence of the amendment to § 418.131, which states that "[t]his subsection shall not enlarge or reduce rights under law," is particularly important since it indicates the legislature's intent as to whether the amendment shall be given retroactive application. Although statutes generally are presumed to operate prospectively, they shall be held to operate retrospectively in Michigan if they "operate in furtherance of a remedy already existing and ... neither create new rights nor destroy existing rights." *Selk v. Detroit Plastic Products,* 419 Mich. 1, 9–10, 345 N.W.2d 184 (1985); *see also McGillis v. Aida Engineering, Inc.,* 161 Mich.App. 370, 373–75, 410 N.W.2d 817 (1987) (applying *Selk* guideline to the Michigan Workers' Disability Compensation Act and concluding that an amendment to § 418.641

should be given retroactive application); *Spencer v. Clark Township*, 142 Mich.App. 63, 66–69, 368 N.W.2d 897 (1985) (retroactive application of an amendment to § 418.161 of the Act). This Court has found no reported decisions considering whether the amendment should be given retroactive application. Nevertheless, the amendment as well as Public Act 28 as a whole contains no language indicating, even indirectly, that the amendment is not intended to operate retroactively. To the contrary, the amendment contains the specific language outlined in *Selk* as a basis for giving a statute retroactive application. Furthermore, the only reasonable explanation for the inclusion of the *Selk* language in the statute is the legislature's intent that the amendment receive such application.

Because of its retroactive application, the amendment to § 418.131, not *Beauchamp*, gives the appropriate threshold for determining whether an employee may bring an intentional tort against an employer.[2] The higher standard necessarily applies regardless of whether the intentional tort occurred prior or subsequent to the *Beauchamp* decision. Finally, as stated in the amendment, the issue of whether an intentional tort occurred is a question of law for the court.

■ William bases his intentional tort claim on the design and layout of Dana's Ecorse plant.[3] He offers evidence showing that Dana placed the drinking fountain, as well as the employees' time clock and restroom, in an aisleway used by fork lift trucks. The parties agree that each workday at least 200 individuals walked across the aisleway during the three eight-hour shifts at the plant.

The driver of the fork lift truck involved in William's injury, however, knew of only one other accident occurring in the aisleway.[4] Although not mentioned in a written statement he prepared immediately following the accident, he asserted in a subsequent deposition that the aisleway was poorly lit and too narrow to accommodate both pedestrian and industrial equipment traffic. He further asserts that he notified Dana officers of the hazardous condition in the aisleway.

Construing the evidence in favor of William's claim shows that William can establish, at best, gross negligence by Dana in failing to modify the layout of its plant. Given the high volume of pedestrian traffic in the aisleway and the single prior accident in the aisleway,[5] this Court has no difficulty concluding as a matter of law that William cannot maintain his intentional tort claim against Dana. There is no factual basis for concluding that Dana had actual knowledge that its plant design and layout were certain to cause an employee's injury and willfully disregarded that knowledge.

---

**2.** This Court disagrees with courts that have continued to apply the less strict *Beauchamp* standard following the amendment to the Act, see *Morgan v. Church's Fried Chicken*, 829 F.2d 10 (6th Cir.1987); *Eads v. Simon Container Machinery, Inc.*, 676 F.Supp. 786 (E.D.Mich.1987), although it fully agrees with the results reached in those cases.

**3.** Plaintiff's counsel offered no evidence in support of William's claim until the filing of a rebuttal to Dana's reply brief. Local Court Rule 17 permits parties to file a brief in support of a motion, a brief in opposition, and a reply brief. Reply briefs are limited to 5 pages and shall be filed not less than 3 court days before oral argument. *Id.* 17(i). Additional briefs and supporting documents may be filed only if a party brings an *ex parte* motion or written request and obtains an *ex parte* order permitting such filing. *Id.* 17(j). Plaintiff's counsel filed the 7–page rebuttal the day before oral argument

without first obtaining an order permitting the filing.

**4.** Dana's safety engineer disputes the fork lift driver's assertion. He claims that no pedestrian accidents occurred in the aisleway from 1972 to the date of William's injury. William, on the other hand, refers to "other accidents" at the plant involving fork lift trucks. Plaintiff's Rebuttal to Defendant's Reply Brief 4. He offers no evidence to support that contention, however.

**5.** *See Morgan,* 829 F.2d at 12 ("The allegation that plaintiff's place of employment had been robbed on six previous occasions might be sufficient to support a finding that plaintiff's injury was likely to occur absent additional safety precautions, but [is insufficient] to support a finding that plaintiff's injury was certain or substantially certain to occur.")

## ORDER

For the above reasons, IT IS HEREBY ORDERED that summary judgment be GRANTED in favor of defendant.

SO ORDERED.